**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**J. W. GADDY and Ruth Gaddy, Respondents.**

**J. W. GADDY and Ruth Gaddy, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 21247.**

United States Court of Appeals Fifth Circuit.

April 12, 1965.

Melva M. Graney, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Sheldon S. Cohen, Chief Counsel, IRS, Charles S. Casazza, Atty., IRS, Lee A. Jackson, William A. Friedlander, Attys., Dept. of Justice, John B. Jones, Jr., Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for Commissioner of Internal Revenue.

Brooks L. Harman, Kenneth C. Farnsworth, Stowe, Harman, Svanas, Farnsworth & McCrea, Odessa, Tex., for taxpayers as petitioners.

Before GEWIN and BELL, Circuit Judges, and McRAE, District Judge.

McRAE, District Judge.

This case comes to this Court for review of the Decision of the Tax Court.

Taxpayers J. W. Gaddy (Gaddy) and Ruth Gaddy, husband and wife, filed a joint income tax return for the calendar year 1957, using a cash method of accounting. The controversy centers around certain lease payments made to Gaddy by El Paso Natural Gas Products Company (El Paso).

In June 1956, El Paso and Gaddy entered into an oral agreement whereby El Paso leased certain tank truck equipment from Gaddy at a rental rate which, when added to the operating and maintenance costs, would not exceed the amount El Paso would have to pay if the hauling were done by a contract hauler. Pursuant to the oral agreement, the parties entered into a written contract dated July 1, 1956. This contract set the rental rate at 23 cents per mile. There was an understanding that this rate would be reviewed at regular intervals and adjusted if it proved to be too high or too low by the standards of the oral agreement.

The rate in this July 1956 contract proved to be too high, but because of changes in El Paso's accounting personnel, who had complete responsibility for record keeping and payments, the rate was not reviewed until September 1957. At that time it was determined that during the period from July 1, 1956, to December 31, 1956, Gaddy had been paid $14,990.01 over and above the amount which would have been due under the terms of the oral agreement. It was also determined that the written agreement had resulted in an overpayment of $444.40 to Gaddy for the period January 1, 1957, to September 30, 1957. Gaddy acknowledged his liability to repay these amounts and the parties entered into a new written contract dated October 1, 1957. This contract set a rental rate of 18 cents per mile, and it was contemplated by the parties that this would be sufficiently low to allow El Paso to recoup the overpayment.

When this rate was reviewed in February 1958, it was determined, however, that the new rate had resulted in a continued overpayment, which amounted to $23,967.49 for the period October 1, 1957, to December 31, 1957. The parties entered into a new written contract in March 1958, setting a still lower rental rate. On July 31, 1958, the whole agreement was finally terminated. At that time there had been a total overpayment to Gaddy in the amount of $57,664.14, of which $10,000.00 had been repaid during 1958. Although the parties acknowledge the liability of Gaddy to repay the overpayment, no further sums have been repaid by Gaddy.

This suit involves only the 1957 income tax return of the taxpayers and the overpayment pertinent thereto. In filing their 1957 return, taxpayers excluded from gross income a sum of $39,401.90, which represented the total overpayment that had accumulated up to December 1957. The Commissioner filed a deficiency notice seeking inclusion of this entire amount in taxpayers' 1957 income under the claim of right doctrine. The taxpayers filed a petition for redetermination in the Tax Court. The Tax Court considered this as three separate sums and held as follows:

1. As to the $14,990.01 reduction which the taxpayers sought to take from their 1957 gross income for the overpayments they had received in 1956, and of which they became aware in 1957, the Court held that this amount had been received by taxpayers in 1956, and thus was not properly taxable to them in 1957.

2. As to the $444.40 overpayment received in 1957 under the contract of July 1, 1956, the Court held that since taxpayers renounced their claim to this amount in the year of receipt and in good faith provided for its repayment under the new contract executed during that year, this amount should be excluded from taxpayers' 1957 income.

3. As to the $23,967.49 overpayment received in 1957 under the contract of October 1, 1957, the Court held that the taxpayers had no knowledge of this overpayment until after the end of the calendar year; that they therefore had no opportunity to renounce this in the same year of receipt; and that it should thus be included in taxpayers' 1957 income by virtue of the claim of right doctrine.

The Commissioner is before this Court seeking review of determination 1. The taxpayers seek review of determination 3. Determination 2 is not before this Court on review.

The Commissioner relies upon the claim of right doctrine as it was enunciated by the Supreme Court of the United States in North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932), wherein the Court stated:

"* * * If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent.

* * *"

Taxpayers rely upon several cases which have found exceptions to the claim of right doctrine where the recipient has renounced his right to the "unearned receipts". e. g., United States v. Merrill, 211 F.2d 297 (9 Cir. 1954); Bates Motor Trans. Lines v. Commissioner, 17 T.C. 151, affirmed 200 F.2d 20 (7 Cir. 1952).

It is the opinion of this Court that the Tax Court properly applied the standards governing this case when it stated:

"The claim of right doctrine and the exception to the doctrine announced in the Merrill case are both in essence predicated upon the practical principle of requiring taxpayers to account on the basis of an annual accounting period; cf. Burnet v. Sanford & Brooks Co., 282 U.S. 359 [51 S.Ct. 150, 75 L.Ed. 383] (1931). Therefore, if the taxpayer does not discover the mistaken overpayment, renounce his claim of right thereto and recognize his obligation for repayment in the same taxable accounting period, the general rule of the claim of right applies and the exception to the doctrine is inapplicable. See Healy v. Commissioner, 345 U.S. 278 [73 S.Ct. 671, 97 L.Ed. 1007]."

The taxpayers seek to place primary reliance upon Bates Motor Trans. Lines v. Commissioner, supra. It is sufficient distinction to state that Bates Motor Trans. Lines involved an accrual basis taxpayer and that in the year of receipt there was a fixed legal obligation to make refunds.

Thus, the decision of the Tax Court is affirmed insofar as it relates to the $23,-967.49 received in 1957 under the October 1, 1957 contract.

The taxpayers concede that the Commissioner is correct in his appeal from the decision of the Tax Court to exclude the $14,990.01 from taxpayers' 1957 income. This portion of the deficiency was not contested by the taxpayers before the Tax Court and obviously was ruled upon by that Court only because of a misunderstanding of the stipulated facts. The Tax Court mistakenly assumed that the Commissioner was attempting to include in the taxpayers' 1957 income sums which the taxpayers had received in 1956. The Commissioner was simply disallowing a deduction from taxpayers' 1957 gross income of those sums which the cash basis taxpayers had discovered in 1957 that they had been overpaid in 1956, but which they had not repaid in 1957.

The case is accordingly remanded to the Tax Court with instructions to enter a judgment requiring inclusion of the $14,990.01 in taxpayers' 1957 income.