WILBUR BUFF, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3573–68.   Filed May 8, 1972.

*Robert D. Heyde*, for the petitioner.
*Marwin A. Batt* and *Marlene Gross*, for the respondent.

QUEALY, *Judge:* The respondent determined a deficiency in the Federal income tax of the petitioner and an addition to the tax as follows:

| Year | Deficiency | Addition to tax under sec. 6651(a)[1] | Addition to tax under sec. 6653(a) |
|---|---|---|---|
| 1965 | $10,650.40 | $518.34 | $532.52 |

At the trial, the petitioner and the respondent stipulated to the following disposition of certain issues:

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

(1) The petitioner is not entitled to any medical expense deduction.

(2) The petitioner is entitled to a deduction of $81 for general sales taxes.

(3) The petitioner is entitled to a deduction of $31.20 for State and local gasoline taxes.

(4) The petitioner is entitled to a deduction of $107.42 for interest, expense, not including mortgage interest.

Since the trial, the respondent has agreed that the petitioner is entitled to the $4,800 of exemptions for his wife and children and that no additions to the tax pursuant to section 6651(a) should be imposed.

Four issues remain for determination by the Court. Those issues are:

(1) Whether the petitioner must include as gross income amounts which he embezzled from his employer in 1965.

(2) Whether the petitioner is entitled to deductions for real estate tax and home mortgage interest payments made by a dependent.

(3) Whether the petitioner is entitled to a deduction against ordinary income for a carryover of a capital loss realized in a prior year.

(4) Whether any part of any underpayment of tax for the taxable year 1965 was due to negligence or intentional disregard of rules and regulations.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Wilbur Buff (hereinafter referred to as the petitioner) is an individual who was a legal resident of Richmond Hill, New York, at the time of the filing of the petition herein. Petitioner filed his 1965 Federal income tax return with the district director of internal revenue at Brooklyn, New York. At the time of the filing of his return, he was incarcerated at Rikers Island Penitentiary, New York, N.Y.

During the year 1965, the petitioner was married to but living apart from his wife, Hilda. Hilda Buff was not employed during that year, and she did not file a separate individual Federal income tax return.

At the beginning of 1965, the petitioner was employed as a bookkeeper by S&D Meats, Inc., Brooklyn, New York. From January 1, 1965, to June 7, 1965, the petitioner embezzled a total of $22,739.56 from S&D Meats, Inc. (hereinafter sometimes referred to as S&D). When the embezzlement was discovered in June 1965, the petitioner immediately admitted the embezzlement. He was presented with an affidavit of confession of judgment by his employer and on June 7, 1965, signed the affidavit "for a debt justly due to the plaintiff," S&D Meats, Inc., for the sum of $22,000 plus interest.

The petitioner also agreed to continue working for S&D and to pay $25 per week in partial repayment of the debt. During the period from

June 7, 1965, until July 7, 1965, the petitioner faithfully complied with this agreement. During this same period, and as part of his agreement with S&D, the petitioner also borrowed $1,000 from the Lafayette Bank, Brooklyn, New York, and paid over the proceeds of that loan to S&D in partial repayment of the debt.

On or about July 7, 1965, petitioner's employer became dissatisfied with this arrangement. The petitioner was fired, and the affidavit of confession of judgment was filed with the Supreme Court, County of Queens. On July 19, 1965, judgment was entered against the petitioner for $22,000 plus interest and costs of $687.25. The judgment received by S&D against the petitioner is still outstanding.

In 1956, the petitioner purchased a house on Collier Avenue, Far Rockaway, New York, for $18,750. The petitioner made a downpayment of $6,000, and the remainder of the purchase price was financed through a mortgage that the petitioner renewed on two occasions. The house was acquired in the name of Hilda Buff. During the taxable year 1965, petitioner and Hilda Buff were estranged. Hilda Buff asserted ownership of the house; and, during 1965, she made payments of real property taxes of $592.76 and payments of interest of $642.80 on account of the house.

In 1957, the petitioner formed a corporation, Biltmore Securities Corp. (hereinafter referred to as Biltmore), to engage in the securities business as a broker-dealer in securities. The petitioner was sole stockholder and president of Biltmore.

Biltmore had 400 shares of stock outstanding, in exchange for which the petitioner transferred $4,000 to the corporation. The petitioner obtained the $4,000 through a personal loan from the World National Bank, New York, N.Y., in the amount of $5,000. Of those funds, $1,000 was used in organizing the corporation. From time to time after the formation of Biltmore, the petitioner contributed additional capital to the corporation.

Biltmore was dissolved in 1960. It had no net assets or net worth upon dissolution, and the petitioner received nothing upon dissolution except an income tax refund of $2,852.93.

In his return for the taxable year 1960, the petitioner set forth a capital loss of $22,950 on the dissolution of Biltmore. In addition, the petitioner showed a capital loss of $1,822.28 carried over from a prior year. As a result of offsetting said loss against capital gains realized in 1960 and subsequent years, together with the deduction of $1,000 against other income for the years 1960 to 1964, inclusive, petitioner's

return for the year 1965 set forth an unused capital loss of $18,425.13, on account of which petitioner claimed a deduction of $1,000.The computation of the amount of the unused capital loss and the deduction was made in the return as follows:

| | |
|---|---:|
| Capital loss carryforward for year 1961 as per schedule filed | $24,547.16 |
| Used thru 1964 | 6,122.03 |
| Unused | 18,425.13 |
| To 1965 to 1040 | 1,000.00 |
| | 17,425.13 |
| Expired | 17,425.13 |
| Balance carried forward | 0 |

The petitioner had a loss carryforward to the year 1965 in an amount of not less than $1,000 on account of the loss sustained on the dissolution of Biltmore in the taxable year 1960.

The petitioner did not report any part of the funds that he embezzled as income on his 1965 Federal income tax return.

#### ULTIMATE FINDINGS OF FACT

(1) No part of the funds originally embezzled by the petitioner in 1965 constituted income to the petitioner in that year.

(2) The petitioner was entitled to a deduction of $1,000 of the capital loss suffered on the dissolution of Biltmore as an offset against income for the taxable year 1965.

(3) The petitioner is not entitled to deductions in 1965 for the property taxes on the real estate and interest payments on the mortgage on the house on Collier Avenue in Far Rockaway, New York.

(4) No part of any underpayment of any tax for the petitioner's taxable year 1965 was due to negligence or intentional disregard of rules and regulations.

#### OPINION

### 1. *Treatment of Embezzled Proceeds*

With respect to this issue, the facts are not in dispute. In 1965, the petitioner was employed by S&D Meats, Inc. In the period between January and June of that year, the petitioner "embezzled" some $22,000 of funds belonging to his employer. Early in June 1965, the petitioner's embezzlement was discovered. He readily admitted taking the money. Thereupon, at the request of his employer, the petitioner ex-

ecuted a confession of judgment and affidavit "for a debt justly due to the plaintiff" for the sum of $22,000 plus interest.[2]

In addition to the confession of judgment, the petitioner obtained a loan in the amount of $1,000 from the Lafayette Bank, Brooklyn, New York, which he paid to his employer. At the same time, the employer retained the petitioner as an employee pursuant to an agreement whereby $25 per week of the total wages payable to the petitioner would be withheld in partial repayment of the petitioner's debt.

We thus have a simple situation where an embezzler is discovered and within the same taxable year the embezzler and his employer agree that the amount taken shall be treated as a judgment debt due from the embezzler. Whether it is a matter of self interest or otherwise, the employer initially deemed it to be to his advantage to disregard the criminality of the petitioner's act in consideration for the agreement by the petitioner to repay the debt.

The respondent argues that once there has been a misappropriation of funds by the employee—the die is cast—the embezzler realizes taxable income. The respondent contends that the only offset to the realization of such income is through the "deduction" allowed by the respondent under section 165 (c) (2) on account of the repayment of the amount embezzled. Thus, the respondent contends that the income of the embezzler is subject to diminution only by repayment of the amount embezzled, and he concludes that such diminution occurs only in the taxable year of such repayment.

The petitioner argues that in determining whether petitioner realized income as a result of taking funds which belonged to his employer, the transaction must be looked at as of the close of the taxable year. In that light, the petitioner cannot be said to have realized any gain. While he had taken and spent some $22,000 belonging to his employer, there was entered against him a judgment for an equivalent amount. New York Civil Practice Law section 5201 (McKinney 1963) provides as follows:

A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment.

Section 5203 of the New York Civil Practice Law then provides that a judgment, when docketed, constitutes a lien on any real property for a period of 10 years, which period can be renewed.

The petitioner's argument would clearly be correct if the Court in the instant case were faced with a situation where there had been a

---

[2] The affidavit was filed in the Supreme Court of the County of Queens; and, on July 19, 1965, judgment was entered against the petitioner for $22,000 plus interest and cost of $687.25.

receipt of income through error or mistake. *United States* v. *Merrill*, 211 F. 2d 297 (C.A. 9, 1954); *J. W. Gaddy*, 38 T.C. 943 (1962), reversed in part on other grounds 344 F. 2d 460 (C.A. 5, 1965). See also *Bates Motor Trans. Lines* v. *Commissioner*, 200 F. 2d 20 (C.A. 7, 1952), affirming 17 T.C. 151 (1951), and *Norman Mais*, 51 T.C. 494 (1968). In *United States* v. *Merrill, supra,* the taxpayer received a payment of $7,500 in executor's fees which were mistakenly paid out by his wife's estate in 1940. The mistake was discovered in the same year, and the taxpayer made appropriate adjustments to his records and those of his wife's estate in recognition of the mistake. The $7,500 was subsequently repaid by the taxpayer in 1943. The court held that the taxpayer was not taxable on the payment in 1940. In so holding, the court said in pertinent part:

We think the $7500 receipt in 1940 was thereby placed outside the operation of the "claim of right" rule. * * * The usual case for application of the rule involves a taxpayer who has received funds during a taxable year, *who maintains his claim of right thereto during that year,* and who subsequently, in a later year, is compelled to restore the sum when his claim proves invalid. We are not aware that the rule has ever been applied where, as here, in the same year that the funds are mistakenly received, the taxpayer discovers and admits the mistake, renounces his claim to the funds, and recognizes his obligation to repay them. * * * We think there is no warrant for extending the harsh claim of right doctrine to such a situation. * * *

In *J. W. Gaddy, supra,* this Court said:

The case of *United States* v. *Merrill, supra,* admittedly creates an exception to the claim-of-right doctrine. The Tax Court in *Charles Kay Bishop,* 25 T.C. 969 (1956), has accepted the doctrine of *United States* v. *Merrill, supra.* We have not found any decision which has eliminated the exception to the claim-of-right doctrine announced in *United States* v. *Merrill.* * * * The claim-of-right doctrine and the exception to that doctrine announced in the *Merrill* case are both in essence predicated upon the practical principle of requiring taxpayers to account on the basis of an annual accounting period; cf. *Burnet* v. *Sanford & Brooks Co.,* 282 U.S. 359 (1931). Therefore, if the taxpayer does not discover the mistaken overpayment, renounce his claim of right thereto, and recognize his obligation for repayment in the same taxable accounting period, the general rule of the claim of right applies and the exception to the doctrine is inapplicable. See *Healy* v. *Commissioner,* 345 U.S. 278.

We must determine if there is a difference with respect to an illegal taking which would call for the application of a different rule.

The treatment of embezzled funds as income to the embezzler is of relatively recent origin. *James* v. *United States*, 366 U.S. 213 (1961). Fifteen years prior to the *James* case, the Supreme Court had held that the proceeds of embezzlement were not taxable as income. *Commissioner* v. *Wilcox*, 327 U.S. 404 (1946). In the consideration of the question presented here, we must therefore look to the *James* case as a starting point.

In *James* v. *United States, supra*, the petitioner, a union official, had embezzled large sums during the years 1951 through 1954, inclusive. He failed to report these amounts in his gross income. He was indicted and convicted of willfully attempting to evade the Federal income tax on such funds. His conviction was affirmed on appeal by the U.S. Court of Appeals for the Seventh Circuit (273 F. 2d 5). On certiorari, the Supreme Court reversed that decision and remanded the case with direction to dismiss. In so doing, however, a majority of the Supreme Court took occasion to overrule its prior decision in *Commissioner* v. *Wilcox, supra*. Writing the opinion for the Court, Chief Justice Warren said:

When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." *North American Oil* v. *Burnet, supra*, at p. 424. In such case, the taxpayer has "actual command over the property taxed—the actual benefit for which the tax is paid," *Corliss* v. *Bowers, supra*. This standard brings wrongful appropriations within the broad sweep of "gross income"; it excludes loans. When a law-abiding taxpayer mistakenly receives income in one year, which receipt is assailed and found to be invalid in a subsequent year, the taxpayer must nonetheless report the amount as "gross income" in the year received. *United States* v. *Lewis, supra; Healy* v. *Commissioner, supra*. We do not believe that Congress intended to treat a law-breaking taxpayer differently.

Clearly, the opinion of the majority in the *James* case holds that embezzled funds constitute income in the hands of the embezzler, notwithstanding the indebtedness or obligation to repay which arises as a matter of law from the taking of property belonging to another. The dominion and control over the funds which the embezzler acquires through his act and the economic enjoyment which he derives from such funds are relied upon as a basis for the tax. The opinion goes on to state that "to the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler's income." As authority for this latter proposition, the opinion refers to the brief filed on behalf of the Government.

Following the *James* case, respondent promulgated Rev. Rul. 65-254, 1965-2 C.B. 50, which provides that each of several acts of embezzlement falls within the ambit of section 165 (c) (2) as a transaction entered into for profit, and that upon making restitution of the embezzled funds, the embezzler is entitled to a deduction under section 165 on account of a loss resulting from such transaction. The clear intent on the part of the respondent in adopting this view was to accord to the embezzler the same treatment that is accorded to taxpayers who are forced to return funds received as income through error or mistake. As the law now stands, it its thus incumbent upon

this Court to treat the embezzlement of funds by an employee in the same manner as any other "transaction entered into for profit" regardless of the criminality involved.

In *Norman Mais, supra,* the petitioner had sold securities belonging to his employer and kept the proceeds. His embezzlement was discovered later in the same year. The petitioner freely admitted his guilt and surrendered a part of the proceeds to his employer. He held out the balance, partly on the advice of his counsel, pending the disposition of criminal charges against him. In the subsequent year, the petitioner was charged and found guilty of the embezzlement, whereupon he made a further restitution. The petitioner argued that the embezzlement did not constitute income because of his admission of guilt, or acknowledgment of debt, in the same year. This Court rejected the petitioner's argument saying:

We believe that the respondent's determination is correct. We interpret the *James* case as meaning that any taxpayer who acquires property under circumstances which do not permit the conclusion that the property was received with a consensual recognition, express or implied, of an obligation to repay, and without restriction as to its disposition, is in receipt of taxable income. Certainly in the case of an embezzlement it cannot be considered that the funds are obtained by the embezzler under any consensual recognition of an obligation to repay; indeed, the victim of the embezzlement is unaware of the diversion of his property. The Supreme Court clearly recognized that in the case of an embezzlement the embezzler is in receipt of taxable income despite the fact that the embezzler has an unqualified duty and obligation to repay the money embezzled. The Court pointed out that even in the case of a law-abiding taxpayer who mistakenly receives income in one year, which receipt is assailed and found to be invalid in a subsequent year, the amount received must be reported in gross income in the year received. The Court then went on to state in effect that in the case of either type of taxpayer any amount repaid may be deducted in the year in which the repayment is made.

As pointed out by the petitioner, we have held in *J. W. Gaddy,* 38 T.C. 943, reversed in part on other issues (C.A. 5) 344 F. 2d 460, that where a taxpayer mistakenly obtains funds to which he is not entitled and in the same year recognizes a fixed and definite obligation to repay and makes provision for such repayment, the amounts received are not to be considered as taxable income in the year of receipt. We think that case is clearly distinguishable from the instant case. * * * Similarly, the case of *United States* v. *Merrill,* (C.A. 9) 211 F. 2d 297, cited by petitioner is also distinguishable, since in that case there was also an implied consensual recognition of an obligation to repay any overpayment.

In the case now before us, the petitioner went further than the taxpayer in the *Mais* case. Not only did the petitioner freely admit to having taken the money, but the petitioner executed an affidavit of judgment and went out and borrowed funds to make partial restitution. Likewise, petitioner's employer accepted the petitioner's obligation and continued petitioner's employment. Thus, unless we are wholly to disregard the acts of the parties, we must assume that there

was a consensual agreement between the petitioner and his employer to treat the transaction as giving rise to a "debt" due from the petitioner. That agreement arose in the same year that the funds were embezzled. If we look to the transaction as of the close of the taxable year, we find that the petitioner had formally relinquished any claim of right. His status was no different than if he had borrowed the money. This case thus becomes indistinguishable from *United States* v. *Merrill, supra,* and from *J. W. Gaddy, supra.*

The case of *Norman* v. *Commissioner,* 407 F. 2d 1337 (C.A. 3, 1969), affirming a Memorandum Opinion of this Court, is clearly distinguishable on its facts from the instant case. In that case, the funds of the employer were diverted by the taxpayer to his own use in the taxable years 1958 through 1962. When the diversions were discovered in 1962, the taxpayer, "in satisfaction" of the employer's claim against him, repaid part of the funds owed to his employer, and irrevocably transferred stock to a trust for the benefit of his employer. Specified amounts of the stock so transferred were to be turned over to the employer in 1962 and in each of the succeeding years. As part of the same transaction, the taxpayer and his employer executed an agreement reciting that for consideration the parties to the agreement released each other from all claims of any nature arising out of the taxpayer's employment.

In the instant case, as distinguished from the *Norman* case, the embezzlement of funds by the petitioner, his recognition of the obligation to repay the embezzled funds, and the making of arrangements for the repayment of those funds, all took place within the same taxable year. Furthermore, in the instant case, there was a consensual recognition of an obligation to repay the embezzled funds in that the petitioner, at the request of his employer, confessed judgment for the amount due.

It is well recognized that the parties to a transaction, dealing at arm's length, may alter, amend, or revoke the transaction so as to change its character for tax purposes if their action takes place within the same taxable year as the original transaction. *United States* v. *Merrill, supra; J. W. Gaddy, supra.* The *James* case does not require a different rule merely because there was a taking of property without the consent of the owner. On the contrary, as interpreted by this Court, the *James* case requires that the original taking be treated just as any other transaction entered into for profit. Where there is "consensual recognition" of indebtedness within the same taxable year, formalized by a confession of judgment, such a transaction does not result in the realization of taxable gain.

## 2. *Deductibility of Taxes and Interest*

In 1956, the petitioner and Hilda Buff, the petitioner's wife, purchased a house on Collier Avenue in Far Rockaway, New York. Title was taken in the name of Hilda Buff. In 1965, she made payments of interest on the mortgage in the total amount of $642.80 and paid real property taxes of $592.76.

The record fails to disclose any liability on the part of the petitioner for the payment of any interest or taxes on account of the house. Furthermore, Hilda Buff refused to pledge the house to secure the debt of the petitioner which is now before us; and, in substance, she has asserted ownership. In view of these considerations, we find and hold that the petitioner has failed to substantiate the deductions which he claimed for taxes and mortgage interest, and we therefore sustain the respondent's disallowance of such deductions.

## 3. *Capital Loss Carryover*

The petitioner formed Biltmore Securities Corp. in 1957, putting $4,000 of his own money into the stock. During the next few years, the petitioner contributed additional capital to the corporation. In 1960, Biltmore was dissolved and the petitioner received nothing in the dissolution except a $2,852.93 income tax refund.

Pursuant to section 331, the $2,852.93 received by the petitioner was treated as being in full payment for the petitioner's stock in Biltmore. Accordingly, the petitioner suffered a capital loss in 1960 on the liquidation of the corporation.

The respondent was fully apprised of the loss and made no effort, either in this proceeding or with respect to any prior years, to refute the claims of the petitioner. Instead, the respondent relied solely on the inability of the petitioner, at this late date, to substantiate the amount of the loss. Under the circumstances, we believe that the petitioner's testimony must be accepted to the extent of the amount claimed for the year 1965, and he is clearly entitled to a $1,000 deduction from ordinary income in that year.

## 4. *Negligence Penalty*

The respondent has asserted additions to tax under section 6653(a)[3] for negligence or intentional disregard of rules and regulations. Since

---

[3] SEC. 6653. FAILURE TO PAY TAX.

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.—If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

we have found that the embezzled funds did not constitute income to the petitioner in 1965, the failure to report said funds as income for that year is not an adequate basis for the assertion of the section 6653(a) penalty.

With respect to all other adjustments which the respondent relies upon to establish the underpayment of tax to which he now applies the section 6653(a) penalty, we find that, on the basis of the record as a whole, the petitioner, in good faith, believed that the items which were the subject of such deductions did present substantial issues of law and/or fact; and settlement of some of those issues does not constitute negligence or intentional disregard of rules and regulations. Consequently, we hold that the petitioner is not liable for the penalty asserted by the respondent. *J. Bryant Kasey*, 54 T.C. 1642 (1970); *Tatem Wofford*, 5 T.C. 1152 (1945); *Herman Senner*, 22 B.T.A. 655 (1931).

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DAWSON, *J.*, dissenting: In almost all respects I agree with the views expressed by Judge Hoyt in his dissenting opinion. But, since the rationale of the majority herein is so astonishing, I am impelled to add the following comments.

It is simply hokey to say that what happened here gave rise to a "debt" due from the petitioner to S & D Meats, Inc., and to draw an analogy to cases like *United States* v. *Merrill*, 211 F. 2d 297 (C.A. 9, 1954), and *J. W. Gaddy*, 38 T.C. 943 (1962). I am surprised that the majority has chosen to fan the flickering flame of form under circumstances where it rewards the thief with an unintended tax benefit and, places in jeopardy the victim's embezzlement loss deduction. It may now be argued that the petitioner's promise to repay the embezzled funds offsets any claimed loss in that year. If any loss is to be allowed, it might have to be postponed until the so-called promise to repay is shown to be worthless. This creates an absurd situation. The effect of the majority opinion is to destroy the underpinnings of the Supreme Court's decision in the *James* case.

In any event, I think the rationale of the *Merrill* case, so heavily relied upon by the majority, is of questionable validity. It erroneously permits a cash basis taxpayer to deduct from or offset against his income for the taxable year an amount which is merely acknowledged to be owed to another but has not yet been paid. I see no distinction between this situation and one where a cash basis taxpayer executes a promissory note for the repayment of a loan together with interest, due in installments over several years. Surely we would not conclude

that this cash basis taxpayer could deduct all the interest due over the term of the loan in the first year when he executed his note, even though the face amount of the note is for the amount of the loan plus the interest due. To the extent that a renunciation of the *Merrill* holding would work a hardship in certain circumstances, relief should be obtained through congressional expansion of the ameliorative provisions now contained in section 1341 of the Code.

RAUM and WITHEY, *JJ*., agree with this dissent.

---

HOYT, *J.*, dissenting: I respectfully dissent from the majority opinion holding that the petitioner did not receive taxable income in 1965 as a result of his embezzlement of funds in that year because of his confession of a judgment in favor of his employer in the same year for the amount stolen.

*James* v. *United States*, 366 U.S. 213 (1961), established the basic principle that embezzled funds constitute taxable income because *at the time of an embezzlement* there is no consensual recognition, expressed or implied, of an obligation to repay the money embezzled; therefore, the taxpayer is chargeable with income to the extent of the amounts embezzled and is entitled to deductions *only when repayments are made*. Quoting from the Government's brief, the Court concluded that, "*If, when, and to the extent that the victim recovers back the misappropriated funds, there is of course a reduction in the embezzler's income.*" (Emphasis supplied.) *James* v. *United States, supra* at 220.

I would conclude that even if the parties in the year of embezzlement make an arrangement for repayment of the embezzled funds, this cannot have the effect of changing the original transaction into one in the nature of a loan; in the absence of a consensual recognition at the time of the taking, the acquisition of embezzled funds results in the receipt of taxable income by the embezzler. As indicated by the Supreme Court, this standard brings wrongful appropriations within the broad sweep of gross income; it excludes loans. *James* v. *United States, supra* at 219.

It is obvious from the facts before us here that there was no consensual recognition when petitioner embezzled funds from his employer in 1965. The petitioner's confession of a worthless judgment thereafter in the year he was caught with his hand in the till did not, to any extent, constitute a repayment in that year; that the judgment was not worth the paper it was written on is clearly shown by the finding that it remains outstanding today, some 7 years later. It can no more be regarded as repayment in 1965 than a worthless promissory note given at that time. In so stating, I do not mean to imply that the

giving of a promissory note or other evidence of indebtedness by an otherwise solvent embezzler, would necessarily constitute payment sufficient to support a current deduction. That is a question which need not now be decided.

It seems to me that the majority's conclusion that the "consensual agreement" between the embezzler and his victimized employer in 1965, after his crime was detected, changed the nature of the embezzled funds from taxable income to nontaxable borrowed funds, equates such subsequent agreement with full repayment in that year. Thus, this taxpayer, who embezzled over $22,000 from his employer in 1965 and who had the full use, command, and benefit of those funds, escapes taxability without making restitution merely because he was caught early in the same year and before the end thereof he acknowledged his obligation to make restitution. This seems contra, not only to the doctrine enunciated in the *James* case but also to other more recent cases.

In *Norman* v. *Commissioner*, 407 F. 2d 1337 (C.A. 3, 1969), certiorari denied 395 U.S. 947 (1969), affirming a Memorandum Opinion of this Court, the taxpayer had embezzled funds from his employer in each of the years 1958 through 1962. In October 1962, the taxpayer, in satisfaction of his employer's claim against him for all years *including 1962*, paid the employer cash and placed stock in trust to be delivered to the employer over a number of years. It was there held that the amounts embezzled constituted income to the taxpayer in the years of embezzlement, and that the taxpayer was entitled to a deduction in 1962 for the amount repaid during such year. The fact that the arrangement to repay was made in 1962 did not change the embezzled funds taken that year from income, taxable under *James*, to nontaxable proceeds from a loan. In affirming our Memorandum Opinion the Court of Appeals stated in part as follows:

In our view the 1962 agreement neither purported to nor could change the original legal character of Norman's earlier conduct from embezzlement to borrowing. * * *

In *Norman Mais*, 51 T.C. 494 (1968), the petitioner embezzled funds and when caught in the same year acknowledged his obligation to make restitution. The same arguments were made on behalf of the taxpayer in that case. We rejected them and after discussing the arguments and applicable principles stated (p. 498):

We interpret the *James* case as meaning that any taxpayer who acquires property under circumstances which do not permit the conclusion that the property was received with a consensual recognition, express or implied, of an obligation to repay, and without restriction as to its disposition, is in receipt of

taxable income. Certainly in the case of an embezzlement it cannot be considered that the funds are obtained by the embezzler under any consensual recognition of an obligation to repay; indeed, the victim of the embezzlement is unaware of the diversion of his property.

We then stated that the acknowledgment by the embezzler of his legal obligation to repay could not be considered a consensual agreement which would justify treating embezzled funds as in any way similar "to borrowed funds and hence excludable from gross income." We concluded (p. 499): "The only relief available to the embezzler is to deduct from income of any year any amount repaid in such year in restitution."

I think the majority here is rejecting those principles announced and applied only a few years ago by this Court in *Norman Mais.* The majority opinion seeks to distinguish the cases by the statement that here the petitioner went further by executing an affidavit of judgment after he was caught. I submit that this is merely a matter of degree, a distinction without a difference. The two cases cannot stand together and yet the majority opinion does not refuse to follow *Mais* or expressly overrule it.

It seems clear to me that the results reached in *Mais* and in *Norman* were correct and required by the opinion of the Supreme Court in *James* v. *United States, supra.* The cases of *United States* v. *Merrill,* 211 F. 2d 297 (C.A. 9, 1954), and *J. W. Gaddy,* 38 T.C. 943 (1962), reversed in part on other grounds 344 F. 2d 460 (C.A. 5, 1965), involving funds mistakenly received and held under a claim of right, on which the majority relies, are clearly distinguishable, as pointed out in our opinion in *Norman Mais, supra.* The quotation from *Mais* contained in the majority opinion omits the carefully drawn distinctions indicating that there were implied consensual recognitions to repay excessive receipts (*Gaddy*) and overpayments (*Merrill*), which obligations were similar to the obligation to repay a loan. No such similar recognition or obligation existed here when petitioner embezzled his employer's funds and I would deny the petitioner's attempt to change the nature of the income by a subsequent *mea culpa* confession of an uncollectible judgment even though it occurred during the same year. Respondent has allowed petitioner a deduction for the small amount he repaid his victim in 1965; I think that is all he should be allowed. I would follow *Mais* and *Norman* here and thus not do damage to stare decisis, creating the inevitable doubts, confusion, and uncertainty that the majority opinion will certainly engender.

RAUM, WITHEY, SCOTT, DAWSON, TANNENWALD, and SIMPSON, *JJ.,* agree with this dissent.