Louis Most and Rose W. Most v. Commissioner.
Most v. Commissioner
Docket No. 3905-70.
United States Tax Court
T.C. Memo 1972-216; 1972 Tax Ct. Memo LEXIS 41; 31 T.C.M. (CCH) 1062; T.C.M. (RIA) 72216; October 16, 1972
Louis Most, pro se, P.O. Box 3036, Beverly Hills, Calif. Robert E. Casey, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following Federal income tax deficiencies and addition to tax against the petitioners: Addition to Tax
Taxable year
Deficiency
Sec. 6653(a) [1]
1963
$4,768.37
$238.42
1966
863.97
1967
828.97
Certain concessions made by the parties in the stipulation of facts can be given effect in the Rule 50 computation. The issues remaining for our decision are: (1) Whether the statutory notice of deficiencies for the taxable years 1963, 1966 and 1967 was mailed to *43 the petitioners at their last known address within the periods required by section 6501; (2) whether the petitioners understated their gross income for the year 1963 by an amount converted by petitioner Louis Most from a client in adjusting an insurance claim, and, if so, whether the amount he retained exceeded 25 percent of the amount of gross income stated in their joint income tax return for that year; (3) whether the petitioner Rose W. Most qualifies for relief under the "innocent spouse" provisions of section 6013(e); (4) whether the petitioners are entitled to income-averaging; and (5) whether the petitioners are liable for the addition to tax for 1963 because of negligence or intentional disregard of rules and regulations. Findings of Fact Some of the facts have been stipulated by the parties. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The petitioners, Louis and Rose W. Most, maintained their legal residence at 913 South Bedford Street, Apartment 4, Los Angeles, California 90035, at the time they filed their petition in this proceeding. They have continuously resided at such address since 1962. The mailing address *44 of the petitioners since 1965 has been Post Office Box 3036, Beverly Hills, California 90212. Petitioners filed timely joint Federal income tax returns for the years 1963, 1966 and 1967 with the district director of internal revenue at Los Angeles, California. On each of these returns the petitioners showed their home address as 913 Bedford Street, Apt. 4, Los Angeles, California 90035. On March 25, 1970, the respondent mailed the petitioners duplicate originals of a statutory notice of deficiencies with respect to the taxable years 1963, 1966 and 1967. These were sent by certified mail and addressed in the following manner: Mr. Louis Most and Mrs. Rose W. Most Post Office Box 3036 Beverly Hills, California 90212 Mr. Louis Most and Mrs. Rose W. Most 913 Bedford Street, Apartment 4 Los Angeles, California 90035 These duplicate original notices of deficiencies were both returned, the envelopes unopened, to the Notices Section of the district director of internal revenue at Los Angeles. These returned notices were received by the Notices Section on April 15, 1970. The envelopes, in which the notices were contained, bear postal markings indicating that the notices *45 were "unclaimed" by the addressees - the petitioners herein. Pursuant to the established procedure of the Notices Section, the returned unclaimed statutory notices of deficiencies were placed, unopened, in an administrative file. The envelopes containing the notices were opened at the trial of this case and were found to contain valid statutory notices of deficiencies for the taxable years 1963, 1966 and 1967. Pursuant to a telephone request from petitioner Louis Most, the respondent sent to the petitioners on April 24, 1970, a copy of the statutory notice of deficiencies which 1064 had previously been mailed to them on March 25, 1970. The petitioners received this copy on April 25, 1970. The respondent's cover letter that accompanied this copy of the notice of deficiencies reads, in part, as follows: We are enclosing a copy of the statutory notice issued to you March 25, 1970 in accordance with your telephone request to Mr. Martin Ross of our Conference Staff. You are advised that this letter does not extend or suspend the 90-day period during which you are entitled to file a petition with the Tax Court of the United States. The last day for filing a petition with the *46 Tax Court in Washington, D.C. is June 23, 1970. Please see the last paragraph of the notice for information on how to obtain a copy of the rules. On June 22, 1970, the petitioners filed their petition herein seeking a redetermination of the deficiencies. Petitioners have at all times material herein reported and computed their taxable income by using the cash receipts and disbursements method of accounting. In 1963 the petitioners reported the following gross income on their Federal income tax return: Law practice
$ 6,081.17
Associated Fire Adjusters 8,257.75
Total $14,338.92 Louis Most (herein individually referred to as the petitioner) is presently and has been since 1934 (except for a three-year suspension) admitted to practice as an attorney in the State of California. He specialized in fire, water damage and explosion litigation. For about 20 years he has had his office at 3028 South Beverly Drive, Beverly Hills, California. In addition to the practice of law, the petitioner was a licensed insurance adjuster, doing business as Associated Fire Adjusters. On June 9, 1962, the petitioner entered into an agreement with David Merl to represent Merl in *47 the preparation and adjustment of a claim for fire loss and damage to Merl's retail shoe store on May 19, 1962. The agreement provided that Merl would employ petitioner as a fire adjuster for a "fee of ten percent (10%) of the amount paid or agreed to be paid by the insurance carriers in settlement of the loss and expenses." There were three separate insurance policies written on Merl's shoe store. The carriers suspected arson and refused to indemnify Merl. On November 9, 1962, the petitioner filed suit in State court on behalf of Merl against all the insurance companies. On May 20, 1963, all three claims were settled and compromised. Merl, in exchange for a promised payment, totaling $34,538.18, released all three companies from further liability. In June 1963 the petitioner received two checks of $2,000 each made payable to himself as attorney and Merl as the insured. In the same month the petitioner received a check for $30,538.18 from the third carrier. [2]
During June 1963 the petitioner received a total of $34,538.18 from the three insurance *48 carriers. He paid $4,000 of this sum to Merl during June 1963. He deposited the bulk ($30,538.18) of the insurance proceeds in his Associated Fire Adjusters checking account. This latter sum was in the form of a draft made payable to both Merl and petitioner. Without authorization the petitioner endorsed Merl's name to this check prior to depositing it. Before making the deposit the balance in the account was $9.13. By October 1963 the balance in the account had been reduced to $317.48 through a pattern of frequent withdrawals. None of this money was given to Merl. It was used by petitioner to pay his and his wife's personal and office expenses. During the time from June until October 1963, Merl repeatedly inquired as to when the balance of the insurance recovery would be paid. After several attempts to obtain the remaining money, Merl and his attorney met with the petitioner on October 7, 1963. At that meeting the petitioner admitted having received the money and promised to repay it at once. The petitioner further agreed, in writing, to pay a total of $32,159.18 to Merl by October 10, 1963. On October 8, 1963, the petitioner borrowed $4,500 from a bank and gave Merl $5,000 - *49 a cashier's check for $1,000 and a check for $4,000 drawn on the Associated Fire Adjusters Trustee Account. At a further meeting on October 9, 1963, the petitioner gave Merl a note for $55,000, purportedly as payment for damages incurred by reason of the delayed payment. At this point the petitioner had agreed to pay Merl in excess of $87,000. 1065 On October 18, 1963, Merl filed an action for conversion against the petitioner in the Superior Court for Los Angeles County to recover $18,858.73 in compensatory damages and $100,000 in punitive damages. On June 15, 1965, judgment was entered against the petitioner in the amount of $18,786.23. This judgment was affirmed by the California Court of Appeals on February 28, 1968. There is no evidence in the record of the instant case showing whether any payments were ever made in satisfaction of the judgment. Throughout the State court litigation the petitioner steadfastly asserted a claim to an attorney's fee of $15,000. This represented a claimed one-third legal fee for a claimed $45,000 recovery. Subsequent proceedings by the California State Bar resulted in petitioner's suspension from the practice of law for a three year period. *50 This was predicated on a finding that the petitioner has misappropriated $23,550.43 [3] due his client, Merl. The difference between the amounts received ($34,538.18) by the petitioner in 1963 from the insurance carriers in settlement of the Merl fire loss claim and the amounts disbursed ($19,395.63) by petitioner in 1963 to Merl and to Merl's creditors is $15,142.55. This is the amount the petitioner retained for his personal benefit. Petitioners did not include or report as income the amount retained in 1963 from the proceeds received in that year from the insurance carriers in settlement of the Merl fire loss claim on their Federal income tax return filed for the taxable year 1963. Nor have they included or reported the amount retained as their income in any other taxable year. Rose W. Most signed the joint income tax returns filed on behalf of herself and her husband *51 for the taxable years 1963, 1966 and 1967. She listed her occupation as housewife in 1963 and 1966. She listed her occupation as a consultant employed by H & R Block for 1967. During 1963 Mrs. Most worked in the petitioner's office at various times when the workload necessitated but was not consulted as to legal matters. She had personal knowledge of the legal controversy between her husband and Merl, and she testified in the Superior Court proceedings. She did not appear or testify on her own behalf at the trial of the instant case. The amount retained by Mrs. Most's husband in connection with the settlement of the Merl fire insurance claim was spent by both of them for business and personal living expenses. Opinion 1. Validity and Timeliness of Statutory Notice of Deficiencies. Petitioners have raised the statute of limitations as a defense in bar with respect to their tax liability, as determined by the respondent in his statutory notice of deficiencies, for the taxable years 1963 and 1966. They contend that the respondent failed, with respect to those taxable years, to mail a statutory notice of deficiency within periods provided by subsections (a) and (e)(1)(A) of section *52 6501 of the Code. They have not raised the statute of limitations with respect to their tax liability for the taxable year 1967. The general three-year statutory period provided by section 6501(a) applies to the years 1966 and 1967. If, as discussed later, the petitioners understated their gross income for the taxable year 1963 in excess of 25 percent of the amount of gross income stated in their income tax return, the six-year statutory period provided by section 6501(e)(1)(A) applies to that taxable year. For the taxable years 1963 and 1966 the last day for the assessment of a deficiency in income tax by the mailing of a deficiency notice was April 15, 1970. The petitioners have alleged that the statute of limitations is a complete defense with respect to the taxable years 1963 and 1966. Section 6212 permits the respondent to send a notice of deficiency in respect of income tax to a taxpayer by certified or registered mail at his last known address. We think the petitioners' reliance on the statute of limitations is without merit. The record clearly establishes that a valid statutory notice of deficiencies for the taxable years 1963, 1966 and 1967 was mailed to the petitioners *53 by certified mail at their last known address on March 25, 1970 - a date well within the periods prescribed by subsections (a) and (e)(1)(A) of section 6501. The evidence shows that one duplicate original statutory notice of deficiencies was sent to the petitioners by certified mail at their home address - the address given by 1066 them on their income tax returns for 1963, 1966 and 1967. The other duplicate original of the notice was sent to the post office box used by petitioners since 1965. Both of these were subsequently returned to the respondent unopened and unclaimed. The statute makes no reference to "receipt" by a taxpayer of a statutory notice of deficiency. Proper mailing to the taxpayer's last known address is the requirement. See Jack D. Houghton, 48 T.C. 656, 660 (1967); Brown v. Lethert, 360 F. 2d 560 (C.A. 8, 1966); Cohen v. united States, 297 F. 2d 760 (C.A. 9, 1962); and Luhring v. Glotzbach, 304 F. 2d 556 (C.A. 4, 1962). Petitioner raises what he terms a "jurisdictional question." He asserts the statute of limitations as a jurisdictional bar to our consideration of this case. The statute of limitations *54 is, however, a defense in bar rather than a plea going to the jurisdiction of this Court. See Samuel G. Robinson, 57 T.C. 735, 737 (1972). Petitioners have successfully invoked the jurisdiction of this Court by virtue of the timely filing of their petition herein. In these circumstances we find and hold that a valid and timely statutory notice of deficiencies was mailed to the petitioners at their last known address. 2. Understatement of Gross Income - Converted Funds Received under Claim of Right. Petitioners reported $14,338.92 as their gross income in their tax return for the year 1963. Respondent has determined that the petitioners understated the amount of their gross income in that year by $15,142.55, which is an amount in excess of 25 percent of the gross income stated in their tax return. The parties herein agree that the petitioners should have included in some taxable year the amounts they earned and retained in 1963 from the Merl fire loss controversy. What is in dispute is the correct amount of unreported gross income earned and retained from the Merl controversy and in what taxable year such amount should have been included in their income. Petitioner *55 contends that the only income he received from the Merl controversy was approximately $11,400. He has computed this amount by deducting the payment ($7,316.23) he made to Pierre Shoes, Inc., from the amount ($18,786.23) that the Superior Court held he had converted from the Merls. However, his computation does not include in income the $3,600 adjusting fee and the expenses of $72.55 allowed by the Superior Court. The Superior Court and the Court of Appeals concluded that the petitioner was not entitled to any credit for the payment made to Pierre Shoes, Inc. The respondent concedes, for income tax purposes, that the petitioner is entitled to credit for this payment. But since the Superior Court did allow the petitioner credit for a $3,600 adjusting fee and the $72.55 of expenses, such amounts were credited to the petitioner against the total amount received ($34,538.11) in 1963 from the three insurance carriers. By adding these credits of $3,600 and $72.55 to the petitioner's figure of $11,470, the sum of $15,142.55 is reached. This is identical to the difference between the total amount received by the petitioner in 1963 with respect to the Merl claim and the amount disbursed by *56 him in 1963. Thus, the amount of the understatement of gross income is $15,142.55 - an amount well in excess of 25 percent of the amount of gross income stated in petitioners' 1963 income tax return. With respect to the taxable year in which this $15,142.55 should have been included in income, the petitioner contends that the reason why none of the funds retained by him were included in gross income on the 1963 tax return was because they became the subject of the State court litigation in October of 1963. He argues that since the outcome of this litigation was not known when the 1963 income tax return was filed in April 1964, it was impossible to determine or estimate with any degree of accuracy what their income would be, if anything, with respect to the Merl controversy. However, the petitioner stated that he believed he had a reasonable chance of winning against Merl. He defended his actions as to the amounts retained by him in 1963 on the basis that he was entitled to an alleged $15,000 attorney's fee for legal services rendered in connection with Merl's fire insurance claim. Apparently this alleged $15,000 fee is the same $15,142.55 that was not included in petitioners' income *57 in 1963. We reject the petitioner's arguments. It is settled law that when a cash basis taxpayer receives money under a claim of right and without restriction as to its disposition, he has taxable income in the year it is received, even though it may still be asserted that he is not entitled to retain the money 1067 and even though he may still be adjudged liable to restore its equivalent. Corliss v. Bowers, 281 U.S. 376 (1930); North American Oil Consolidated v. Burnet, 286 U.S. 417 (1931). This "claim of right" doctrine is controlling here. Throughout the entire State court litigation that ensued from the Merl fire loss controversy the petitioner steadfastly defended the manner in which he handled the insurance funds by claiming that he was entitled to "a one-third attorney fee on the recovery of $45,000." He was simply unable to convince any of the State courts that his claim had any merit. They denied his claim for an attorney's fee. Petitioner appears to be playing the role of "Janus" here. With one profile he said to the Merls and the California courts that he kept approximately $15,000 as an attorney's fee for the services he performed in settling *58 the insurance claims. Now, with the other profile, he says to us that the money he retained in 1963 under such claim of right should not be taxed to him in that year. The inconsistency is glaring. An alternative ground for concluding that at least $11,470 of the funds retained by the petitioner constituted taxable income to him in 1963 is that he wrongfully exercised dominion and control over it to the detriment of the Merls. See Rutkin v. United States, 343 U.S. 130 (1952). Wrongful appropriations are within the broad sweep of "gross income." James v. United States, 366 U.S. 213 (1961). The petitioner admitted that the funds, which were determined by the State courts to have been wrongfully converted (48 Cal. Jur. 2d 536, Trover and Conversion, Sec. 2), were used by himself and his wife for business and personal living expenses. Obviously they received the use and economic benefit of the money. Petitioner has never claimed that he borrowed the wrongfully converted money from the Merls. The mere fact that, in a subsequent year, the petitioner was found liable for wrongful conversion of the funds vitiates any notion of a "loan." There was no consensual *59 recognition of an obligation to repay the funds at the time of the taking. See Norman Mais, 51 T.C. 494 (1968); Norman v. Commissioner, 407 F. 2d 1337 (C.A. 3, 1969), affirming a Memorandum Opinion of this Court. To be sharply distinguished from this situation is Wilbur Buff, 58 T.C. 224 (1972), a case with a limited perimeter, where there was an embezzlement, a recognition by the taxpayer to repay the embezzled funds, the making of arrangements for the repayment, an acknowledgment of a "debt," and the entry of a confessed judgment for the equivalent amount of the "debt" - all of which took place in the same taxable year. Accordingly, we hold that the petitioners understated their gross income for the taxable year 1963 by $15,142.55 and that such amount was in excess of 25 percent of gross income reported in their joint Federal income tax return filed for 1963. Thus the six-year statute of limitations provided by section 6501(e)(1)(A) of the Code does not bar the assessment of a deficiency and addition to tax for 1963. 3. Innocent Spouse Provisions of Section 6013(e). We must consider the effect of the provisions relating to innocent spouses *60 that were enacted on January 12, 1971. Pub. L. 91-679 (84 Stat. 2063, 1971-1 C.B. 547). Section 6013, relating to joint returns, was amended to add subsection (e), which provides in pertinent part: (e) Spouse Relieved of Liability in Certain Cases. - (1) In General. Under regulations prescribed by the Secretary or his delegate, if - (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, *61 and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. Under section 6013(e) Rose W. Most may be relieved of liability for the deficiency and addition to tax for 1963, but to 1068 be entitled to such relief she has the burden of proving that (1) she did not know of or have reason to know of the omissions from income (subsection (e)(1)(B)), and (2) that she did not significantly benefit directly or indirectly from the items omitted from gross income (subsection (e)(1)(C)). Jerome J. Sonnenborn, 57 T.C. 373 (1971); Nathaniel M. Stone, 56 T.C. 213 (1971). Although Mrs. Most did not appear and testify on her own behalf, we do know that she benefited by sharing in the use of the omitted income. Some of it was used for personal living expenses. It is not altogether clear whether she knew about the income being omitted from the 1963 income tax return, but she did sign the joint return, she worked in her husband's office and she met Merl on several occasions. We never received the benefit of her testimony. Her failure to testify creates the normal inference that had she testified her *62 testimony would have been unfavorable to her position. Jerome J. Sonnenborn, supra at 383. We must therefore conclude on this record that she has failed to carry her burden of proving that she is entitled to be relieved of liability for the deficiency and addition to tax under the provisions of the statute. See Robert L. McCoy, 57 T.C. 732, 734 (1972). 4. Income Averaging. Having decided that the petitioners understated their gross income in the taxable year 1963, it is clear that the income-averaging rules of sections 1301 through 1305 (Pub. L. 88-272) are not controlling here because they apply only to taxable years beginning after December 31, 1963. Consequently, only the old income-spreading provisions of prior sections 1301-1307 are applicable. Section 1301(a)(2) of the Code, which was in effect in 1963, provided that employment must cover a period of 36 months or more. The employment contract with Merl was entered into on June 9, 1962. Since all the insurance claims were settled by October 1963 and the petitioner did not render any services for Merl after that date, the period of employment never reached the required 36 months for income spreading *63 under the provisions of the law then in effect. In these circumstances the petitioners do not qualify for income averaging or spreading. 5. Addition to Tax under Section 6653(a). Respondent determined that the petitioners were liable for an addition to tax of $238.42 for 1963 because of their negligence or intentional disregard of rules and regulations. The determination is presumptively correct. The petitioners have the burden of proving it wrong. To do so they must demonstrate that they exercised due care. Joseph Marcello, Jr., 43 T.C. 168, 182 (1964), affirmed on this issue sub nom. Marcello v. Commissioner, 380 F. 2d 499 (C.A. 5, 1967). In view of the facts herein, the argument that there was an honest misunderstanding or that matters were confusing is not convincing. Petitioner Louis Most was a practicing attorney in California. He prepared the 1963 joint income tax return. There was no reliance upon the advice of others. He knew the difference between the amount he had received in 1963 from the insurance carriers and the amount he had disbursed in 1963 to Merl and Merl's creditors. He testified that the petitioners used the monies retained by *64 him in 1963 for their personal living and business expenses. As an attorney he knew, or should have known, what the requirements of the tax law were with regard to reporting funds involved in the Merl controversy. The claim of right doctrine was then a firmly established principle in the law of Federal taxation. Yet he failed to report such a large discrepancy between actual and reported income without any adequate or acceptable explanation. We think the omission of such a significant amount of gross income was not the result of a good faith mistaken belief as to the legal effect of petitioners' actions with respect to the monies involved in the Merl fire loss controversy. In our opinion they have failed to carry their burden of proof on this issue. To reflect concessions made by the parties and our conclusions on the disputed issues, Decision will be entered under Rule 50. 1069 Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. This represented a $32,000 settlement minus a $1,461.82 set-off which had been attached by one of Merl's garnishing creditors.↩
3. This figure was calculated by adding the $30,538.18 check from the insurance carrier to the balance in the account prior to its deposit ($9.13) and deducting a payment made to a creditor of Merl ($3,079.40), petitioner's fee ($3,600) and the balance on hand after the withdrawals had been made ($317.48).↩