Lucius N. Littauer, William Littauer and Manufacturers Trust Company of New York, N. Y., as Executors of the Last Will and Testament of Eugene Littauer, Deceased, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 51858. Promulgated December 31, 1931.

*Fred Linus Carroll, Esq.*, for the petitioners.
*John E. Marshall, Esq.*, for the respondent.

OPINION.

TRAMMELL: In the pleadings the petitioners set forth nine assignments of error, upon the basis of which it is asserted that the respondent determined the deficiency in controversy. These alleged errors will be considered in the order stated in the petition.

1. The petitioners allege that the respondent erred in including in the gross estate 1,550 shares of stock in the Fonda Glove Lining Company at $60 per share instead of $50 per share, as returned by the executors. At the hearing respondent conceded the contention of the petitioners on this issue, and we have accordingly found that the fair value of this stock at the date of decedent's death was $50 per share.

2. and 3. Under these assignments the petitioners allege that the respondent erred in including in the gross estate certain "French securities" at a valuation of $31,257.56 instead of $20,271 as returned by the executors, and in including in the gross estate certain

"British securities" at $169,032.20 instead of $150,242.48, as returned by the executors.

The evidence established that, at the time of his death, decedent owned certain securities which were deposited in banks in France and England. After decedent's death one of the executors personally went to those countries to obtain possession of said securities, but the French banks refused to deliver the securities there to the executor until death taxes claimed by the French Government in the amount of $10,986.56 had first been paid. Likewise the English banks refused to turn over to the executor the securities in their possession until inland revenue dues claimed by the British Government in the amount of $18,789.72 had first been paid. The executors paid out of moneys forming part of the estate in the United States the taxes claimed by the two foreign governments respectively, and the securities were thereby brought into the administration of the decedent's estate in the United States.

The securities were returned by the executors as a part of the gross estate at their value less the amount of taxes paid to the French and British Governments. In determining the deficiency the respondent included the securities without deducting said taxes. The petitioners contend, first, that the securities should be included at their value less the taxes paid in order to obtain possession and bring them into the administration of the estate in the United States, and secondly, in the alternative, that deduction of the taxes should be allowed as administrative expenses if they are included in the gross estate at their full value.

To support their first contention, the petitioners rely upon the decision of the Supreme Court in *Frick* v. *Pennsylvania*, 268 U. S. 473. That case involved the question of the power of the State to impose a tax upon the transfer of property by will or intestate laws, under the due-process-of-law clause of the Fourteenth Amendment to the Constitution. Here a vitally different situation is presented, which, we think, renders the *Frick* decision inapplicable. The distinction is clearly defined by the Supreme Court in its opinion in the *Frick* case, from which we quote:

In *United States* v. *Bennett*, 232 U. S. 299, 306, * * * where this Court had occasion to explain the restrictive operation of the due process of law clause of the Fourteenth Amendment, as applied to the taxation by one State of property in another, and to distinguish the operation of the like clause of the Fifth Amendment, as applied to the taxation by the United States of a vessel belonging to one of its citizens and located in foreign waters, it was said:

"The application to the States of the rule of due process relied upon comes from the fact that their spheres of activity are enforced and protected by the Constitution and therefore it is impossible for one State to reach out and tax property in another without violating the Constitution, for where the

power of the one ends the authority of the other begins. But this has no application to the Government of the United States so far as its admitted taxing power is concerned. It is coextensive with the limits of the United States; it knows no restriction except where one is expressed in or arises from the Constitution and therefore embraces all the attributes which appertain to sovereignty in the fullest sense. Indeed the existence of such a wide power is the essential resultant of the limitation restricting the States within their allotted spheres * * *."

In the instant case the decedent died in 1929, and the questions here presented are governed by the Revenue Act of 1926, which contains the following pertinent provisions:

SEC. 301. (a) In lieu of the tax imposed by Title III of the Revenue Act of 1924, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 303) is hereby imposed upon the transfer of the net estate of every decedent dying after the enactment of this act, whether a resident or nonresident of the United States;

    *         *         *         *         *         *         *

(b) The tax imposed by this section shall be credited with the amount of any estate, inheritance, legacy, or succession taxes actually paid to any State or Territory or the District of Columbia, in respect of any property included in the gross estate. The credit allowed by this subdivision shall not exceed 80 per centum of the tax imposed by this section and shall include only such taxes as were actually paid and credit therefor claimed within three years after the filing of the return required by section 304.

SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

    *         *         *         *         *         *         *

SEC. 303. For the purpose of the tax the value of the net estate shall be determined—

(a) In the case of a resident, by deducting from the value of the gross estate—

(1) Such amounts for * * * administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States), * * * as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered, but not including any income taxes upon income received after the death of the decedent, or any estate, succession, legacy, or inheritance taxes * * *.

The intention of Congress is clearly discernible in the foregoing provisions of the statute. Section 301 (a) imposes the tax upon the net estate, the value of which is determined by deducting from the value of the gross estate the items specifically enumerated in section 303. The allowance of deductions is a matter within the discretion of Congress, and only such deductions as are authorized may be allowed in computing taxes.

In section 301 (b), *supra*, it is provided that the tax imposed shall be credited with the amount of any estate, inheritance, legacy or

succession taxes actually paid to any State or territory or the District of Columbia to the extent of 80 per centum of the Federal tax, but the statute does not authorize the deduction of such taxes in computing the value of the net estate. On the contrary, section 303 (a) (1) specifically excludes such taxes as allowable deductions.

The British and French taxes here in controversy, not having been paid to " any State or Territory or the District of Columbia," are not allowable as credits, and since said taxes obviously are in the nature of " estate, succession, legacy, or inheritance taxes, they are not allowable as deductions in computing the value of the net estate.

The petitioners' main contention is that in respect of the foreign taxes in question the British and French Governments were in the position of " lienors in possession," and that it was necessary for the petitioners to pay said taxes in order to acquire possession of the securities and to bring them within the administration of the decedent's estate in the United States. Hence, the petitioners argue that only the net amount of the value remaining after payment of the foreign taxes should be included in the gross estate.

In our opinion this argument is untenable in view of the provisions of section 303 (a) (1), *supra*. That section provides for the deduction of " unpaid mortgages upon, or any indebtedness in respect to, property (except, in the case of a resident decedent, where such property is not situated in the United States)." The decedent was a resident of the United States at the time of his death, and the British and French securities constituted property which was not situated in the United States. It is thus apparent that, even if the foreign taxes had constituted liens upon the securities of the decedent, or if they might be said to be indebtedness in respect to property included in the decedent's gross estate, the amounts thereof are, by the plain language of the statute, excluded as allowable deductions. In the second place the Federal statute here involved does not require that assets be brought into the limits of the United States in so far as a citizen is concerned in order that the United States may have jurisdiction to levy a tax upon its transfer by death. The tax may be levied upon the transfer abroad, while in the case of a State transfer tax, which was involved in the *Frick* case, another question is involved.

To include the decedent's securities in the gross estate at their value, less the amount of the taxes paid to the foreign governments, would be in effect to allow the amounts of such taxes as deductions in computing the value of the net estate, and would violate not only the clearly expressed intention of Congress, but the specific provisions of the statute. This we may not do.

For the same reason the amounts of the said taxes may not be deducted as administration expenses. It is not necessary to determine here whether the foreign taxes in question might properly be classified as administration expenses, for, if so, then the provision excluding such taxes as allowable deductions must be construed as a limitation upon or exception to the provision permitting the deduction of administration expenses.

To concede either of the petitioners' contentions would be in effect to allow the amounts of the said foreign taxes as deductions in computing the value of the decedent's net estate, and to allow indirectly what may not be allowed directly. On these points, the action of the respondent is sustained.

4. and 5. These issues involve gifts of money made by the decedent to his brother, William Littauer, and to his niece, Catherine Louise Doeller, within two years of the date of his death. The gifts made by the decedent to his brother within such period aggregated $109,550, of which the respondent included in the gross estate $104,550, or the excess over $5,000. The gifts made by the decedent to his niece within said two-year period amounted to $9,544.15, of which the respondent included in the gross estate the excess over $5,000, or the net amount of $4,544.15.

At the hearing the petitioners offered evidence, without objection from the respondent, to establish that these gifts were in fact not made in contemplation of death, and, admittedly being completed gifts at the time made, they could not have been intended by the decedent to take effect in possession or enjoyment at or after his death. Obviously, then, the respondent included said gifts in the gross estate in excess of $5,000 pursuant to section 302 (c) of the Revenue Act of 1926, which provides that:

Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title.

Upon completion of the testimony offered by the petitioners at the hearing, the respondent conceded that said gifts were in fact not made in contemplation of death, and that the amounts thereof included in the gross estate should be excluded in the redetermination of the deficiency. This constituted in effect a confession of error on the part of the respondent, and also an agreement or stipulation of

the parties that the gifts should not be included in the gross estate. The statute, however, provides that gifts of the kind here involved "shall be deemed and held to have been made in contemplation of death," and so subject to tax. A conclusive presumption is raised by the statute which does not admit of rebuttal. The action of the respondent in confessing error, or if viewed as a stipulation of the parties, amounts substantially to a conclusion of law in direct contravention of the statute. In these circumstances, we can not give effect to such a confession or stipulation.

On the other hand, the same net result must be reached, but for an entirely different reason. The validity of the statute above quoted was considered by us in *Estate of Robert Todd Lincoln*, 24 B. T. A. 334, and we there held that the conclusive presumption provision of section 302 (c) of the Revenue Act of 1926 is unconstitutional. On authority of that decision, we hold here that, since the respondent included the gifts in question in decedent's gross estate because of such invalid statutory presumption, and it having been shown that the gifts in fact were not made in contemplation of death, the amounts included by the respondent will be excluded in redetermining the deficiency.

6. This assignment of error relates to the action of the respondent in disallowing a claim of Dr. Berg against the estate in the amount of $15,000 for surgical services rendered to the decedent. No evidence was offered thereon at the hearing, and for the purposes of this proceeding the issue may be considered as abandoned in view of the following statement of counsel for the petitioners:

Now, your Honor, I think I made a misstatement when you asked me whether any of the items in the petition would not be pressed; the item of the bill of Dr. Berg will not be pressed at this time, that being in dispute, pending in the Surrogate's court, as to the amount.

7. This item relates to the claim of Dr. Eliasberg in the amount of $500, which, the evidence shows, was compromised and settled by the executors on October 23, 1930, for $250. The latter amount constitutes an allowable deduction from the value of the gross estate.

8. and 9. These issues involve additional income taxes of the decedent for the years 1927 and 1928, the amounts of which were originally in controversy. The matter was adjusted and on February 4, 1931, the executors paid the amounts set out in our findings of fact, which amounts will be allowed as deductions in redetermining the deficiency.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*