J. W. GADDY AND RUTH GADDY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90213.    Filed September 26, 1962.

*Brooks L. Harman, Esq.*, for the petitioners.
*Harold D. Rogers, Esq.*, for the respondent.

944

946

OPINION.

BLACK, *Judge:* Facts have been stipulated as to certain other over-payments under Gaddy's contracts which were made to him by El Paso subsequent to 1957. The taxable year 1957 is the only year which

we have before us in this proceeding; therefore, we shall confine ourselves to a discussion of the deficiency determined for that year. We shall not discuss any overpayment which may have been made in 1958.

Section 61(a) of the 1954 Code provides that gross income means all income from whatever source derived, including income from rents (subpar. (5)). Respondent has determined in his deficiency notice that Gaddy, who was on the cash basis "received transport income of $39,401.90 from the El Paso Natural Gas Products Company in the taxable year 1957 which was not reported on your return for that year. Therefore, your taxable income is increased $39,401.-90." As a matter of fact, the stipulation shows that Gaddy did not receive from such source $39,401.90 in 1957; $14,990.01 of this amount was received by him in 1956 and only the amount of $24,411.89 was received in 1957. Therefore, it seems clear that respondent was wrong in his determination that Gaddy received in 1957 transport income in the amount of $39,401.90. As we have already pointed out, he received $14,990.01 of this amount in 1956. The tax consequences which follow the receipt of this amount of $14,990.01 in 1956 will be later discussed herein. It is stipulated that Gaddy received in transport rental fees $24,411.89 from El Paso in 1957. Respondent contends that this amount of $24,411.89 was subject to Gaddy's unfettered command and was therefore taxable to him under the holding of the Supreme Court of the United States in *North American Oil Consolidated* v. *Burnet*, 286 U.S. 417 (1932), wherein the Court stated:

If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent. * * *

The case of *North American Oil Consolidated* v. *Burnet, supra*, is, of course, the fountainhead of the claim-of-right doctrine and, simply stated, the issue in the instant case is whether the overpayments in rentals of $24,411.89 received by Gaddy in 1957 are includible in gross income in 1957 under the claim-of-right doctrine. Petitioners do not contest the facts that the amount of $24,411.89 was actually received in 1957 and that Gaddy commingled the funds with his own funds. Petitioners' position is that where an obligation to repay has been recognized in the year of overpayment by both parties, the amounts of the overpayments are without the scope of the claim-of-right doctrine. Petitioners primarily rely on the decision of the Ninth Circuit in *United States* v. *Merrill*, 211 F. 2d 297 (1954), for this proposition. In that case the taxpayer, the surviving husband, as executor

of his deceased wife's estate, paid to himself by mistake an executor's fee from his wife's share of community property. The entire community was properly chargeable with the fee. Taxpayer was not held to be subject to an income tax on that portion where the mistake was discovered and an adjustment made in the books of the taxpayer and the estate, all in the same year. The court found that:

In the instant case appellee received an overpayment of $2500 from his deceased wife's estate in 1939. The mistake was not discovered until 1940 and the sum was not repaid until 1943. * * * As executor he paid the funds to himself, as an individual, under an honest mistake. As an individual he received the funds under a good faith claim of right. He must therefore be held taxable upon the $2500 he erroneously received from his wife's share of the community funds in 1939.

A different problem is presented, however, with respect to the $7500 in executor's fees which were mistakenly paid out of the wife's share of the community property in 1940. For as to that part of the fee, the mistake was discovered in the same year as the sum was received (1940) and appropriate adjustments were made in his own books and those of his wife's estate *in that year* in recognition of the mistake. We think the $7500 receipt in 1940 was thereby placed outside the operation of the "claim of right" rule. That rule is founded upon the proposition that, when funds are received by a taxpayer under claim of right, he must be held taxable thereon, for the Treasury cannot be compelled to determine whether the claim is without legal warrant, and repayment of the funds in a later year cannot, consistently with the annual accounting concept, justify a refund of the taxes paid. United States v. Lesoine, supra, 203 F. 2d at page 126, and cases there cited. The usual case for application of the rule involves a taxpayer who has received funds during a taxable year, *who maintains his claim of right thereto during that year*, and who subsequently, in a later year, is compelled to restore the sum when his claim proves invalid.[5] We are not aware that the rule has ever been applied where, as here, in the same year that the funds are mistakenly received, the taxpayer discovers and admits the mistake, renounces his claim to the funds, and recognizes his obligation to repay them. Cf. Carey Van Fleet, 2 B.T.A. 825; Curran Realty Co. v. Commissioner, 15 T.C. 341. We think there is no warrant for extending the harsh claim of right doctrine to such a situation. In such case the Internal Revenue Bureau is not faced with the problem of deciding the merits of the claim to the funds received, for the question has been resolved by the interested parties. No question is here raised as to the *bona fides* of appellee's 1940 bookkeeping entries relative to the mistaken payments. Good faith is indicated by the fact that the taxpayer's $7500 obligation to the estate was not only recognized by him in 1940 but was paid in cash in 1943. [Footnote omitted.]

See also *Bates Motor Trans. Lines* v. *Commissioner*, 200 F. 2d 20 (C.A. 7, 1952), affirming 17 T.C. 151.

The case of *United States* v. *Merrill, supra*, admittedly creates an exception to the claim-of-right doctrine. The Tax Court in *Charles Kay Bishop*, 25 T.C. 969 (1956), has accepted the doctrine of *United States* v. *Merrill, supra*. We have not found any decision which has

eliminated the exception to the claim-of-right doctrine announced in *United States* v. *Merrill*, and *Bates Motor Trans. Lines* v. *Commissioner*, both *supra*. Consequently, if the facts in the instant case fall within the protection of the exception announced in those cases, we feel free to apply it. We are of the opinion, however, that most of the amount of $24,411.89 here in issue is within the scope of the claim-of-right doctrine and is therefore reportable as gross income. Stated briefly, the *Merrill* case holds that where a fixed and definite obligation to repay is recognized in the year of overpayment and provision is made for its repayment, the amounts received are not within the scope of the claim-of-right doctrine. The claim-of-right doctrine and the exception to that doctrine announced in the *Merrill* case are both in essence predicated upon the practical principle of requiring taxpayers to account on the basis of an annual accounting period; cf. *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359 (1931). Therefore, if the taxpayer does not discover the mistaken overpayment, renounce his claim of right thereto, and recognize his obligation for repayment in the same taxable accounting period, the general rule of the claim of right applies and the exception to the doctrine is inapplicable. See *Healy* v. *Commissioner*, 345 U.S. 278.

*Overpayment of $444.40 Received in 1957 Under the Contract of 1956.*

Our understanding of the facts in the instant case as stipulated is to the effect that in the year in issue, 1957, El Paso and Gaddy realized that an overpayment was made to Gaddy under the first contract dated July 1, 1956. A total overpayment of $15,434.41 was made under this contract. Of this amount, $14,990.01 had been paid to Gaddy in 1956 and we shall discuss this $14,990.01 later in this opinion. Consequently, a total overpayment of $444.40 was made to Gaddy in 1957 under the 1956 contract in the same year the overpayment was discovered. We find this amount should be excluded from gross income in 1957. There is no question raised as to Gaddy's good faith and there is ample evidence to support the conclusion that both parties recognized the existence of Gaddy's liability to El Paso under this contract for the overpayments made thereunder. We hold that Gaddy was not liable for tax on the $444.40 overpaid in 1957 under the contract of 1956. He renounced his claim to that amount in that year and provided for its repayment to El Paso under the new contract whereby the price for transportation was reduced from 23 cents a mile to 18 cents a mile. As to this amount, we hold for petitioners.

*Overpayments Received in 1957 Under the Second Contract.*

We reach a different conclusion as to the remainder of the overpayments received in 1957 amounting to $23,967.49. The overpayments made to Gaddy in 1957 by El Paso under the second contract executed on October 1, 1957, were not discovered until February 1958. The second contract was designed to recover the excess funds paid to Gaddy under the first contract in 1956 and 1957 by reducing the rental to 18 cents per mile but it failed to fulfill that goal. In fact, Gaddy received further overpayments in 1957 in the amount of $23,-967.49 under the second contract, due mainly to changes in the transportation needs of El Paso. But Gaddy could not have renounced his claim of right to these overpayments in the year of their receipt because the facts were not discovered until February of the following year. There was no way for him to know the overpayments existed under the second contract in 1957. As to these funds, Gaddy received them without restriction as to their disposition; they were commingled with his other funds and used without restraint of any kind. Gaddy did not discover and admit the mistake, renounce his claim to the funds, and recognize his obligation to repay them in the year of overpayment as was done in *United States* v. *Merrill, supra.*

*As to the $14,990.01 Received in 1956 Under the First Contract.*

In their reply brief, petitioners concede that the payments received in 1956 under the first contract were taxable income in 1957. It was stated therein that:

Certainly, the Petitioners concede the correctness of the Respondent's determination as to said $14,990.01 inasmuch as this amount was overpaid during the year 1956, but was not discovered during said year, and therefore, since El Paso and Petitioners did not agree that the amount had been overpaid during the year of overpayment (1956) it was properly placed within the scope of the claim of right doctrine. * * *

It was also stipulated that: "Only $24,411.89 of the $39,401.90 is in controversy in this proceeding." Notwithstanding this concession of petitioners' counsel in their reply brief, we cannot agree that the $14,990.01 was taxable income to petitioners in 1957. It certainly was not received in that year. It is stipulated that it was received in 1956 and deposited in the bank in the same way as petitioners' other funds were deposited. Inasmuch as it is stipulated that petitioners were on the cash basis, if the $14,990.01 was taxable to petitioners under the claim-of-right doctrine of *North American Oil Consolidated* v. *Burnet, supra,* it was clearly taxable to petitioners in 1956 and not in 1957.

The Tax Court is not bound as to the law of the case by any concession or stipulation made by the parties. Cf. *Ohio Clover Leaf Dairy Co.*, 8 B.T.A. 1249 (1927), affirmed per curiam 34 F. 2d 1022 (C.A. 6, 1929). In that case, among other things, we said:

That portion of the agreement between counsel which we have quoted must be disregarded as of no effect for two reasons. In the first place, insofar as it attempts to stipulate that an item is deductible under the statute as a loss, it is a conclusion of law. As such it is either an agreement which entirely removes the question from the proceeding, or else it is an attempt to limit the function of the Board to decide the issue of liability. In either aspect it is ineffective. * * *

See also *Lucius N. Littauer Et Al.*, *Executors*, 25 B.T.A. 21 (1931). Cf. *Ernst Kern Co.*, 1 T.C. 249, 264 (1942); *Bloomfield Steamship Co.,*. 33 T.C. 75, 86 (1959).

In the instant case the facts relating to the amounts received by Gaddy in 1956 and 1957 have been stipulated. We, of course, must accept these stipulated facts as true and we do accept them as true. However, the petitioners' tax liability in 1957 is not a question of fact; it is a question of law which the Tax Court must decide for itself on the facts which have been stipulated. We cannot accept the concession of petitioners' counsel that petitioners are liable for tax on the $14,990.01 in question in 1957. Doubtless petitioners were taxable in 1956 on the $14, 990.01 which they received in that year under the 1956 contract. No reason occurs to us why they would not be taxable in that year under the claim-of-right doctrine. They received it in that year, commingled it with their other funds, and had unfettered command over it in 1956. Doubtless petitioners returned it as income in 1956 but we do not know as to that because nothing is stipulated about petitioners' taxable income in 1956. Since that year is not before us we decide nothing about the tax liability for 1956. What we do decide in the instant case is that this amount of $14,990.01 was not taxable to petitioners in 1957. We have already given our reasons as to why the $444.40 received in 1957 under the 1956 contract is properly excluded from gross income in 1957.

*Decision will be entered under Rule 50.*