T.C. Summary Opinion 2001-6


UNITED STATES TAX COURT


BARBARA ANN MCMAHON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12148-99S.                    Filed January 24, 2001.


Barbara Ann McMahon, pro se.

<u>Shawna A. Early</u>, for respondent.


DINAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $9,895 for the taxable year 1995.

The issue for decision is whether certain amounts petitioner received from her former husband are includable in her income as alimony or separate maintenance payments.[1]

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioner resided in Ridgefield, Connecticut, on the date the petition was filed in this case.

Petitioner and her former husband, George R. Reed, separated in April 1993. Mr. Reed filed a petition for divorce on December 10, 1993, in the Circuit Court, Seventh Judicial District, for St. Johns County, Florida. On December 23, 1993, Mr. Reed filed with the circuit court a Motion to Establish Temporary Child Support and Other Temporary Relief. Petitioner separately sought temporary support from Mr. Reed by filing with the court a motion for Application for Temporary Allowances. This latter motion was argued before the court with counsel representing both petitioner

---

[1]In the petition, petitioner disputes the interest due on the deficiency. This Court does not have jurisdiction to redetermine interest in this case prior to the entry of a decision redetermining the deficiency. See sec. 7481(c); Rule 261; Pen Coal Corp. v. Commissioner, 107 T.C. 249, 255 (1996).

and Mr. Reed, and on June 30, 1994, the court entered an order ("temporary order") granting petitioner "temporary spousal support." Petitioner and Mr. Reed entered into a final divorce settlement agreement ("final agreement") on July 19, 1995, dissolving their marriage. During the taxable year in issue, 1995, petitioner received six payments of $4,000 each pursuant to the temporary order and one payment of $10,000 pursuant to the final agreement.

Petitioner reported no alimony income on her Federal income tax return for 1995. The statutory notice of deficiency reflected respondent's determination that petitioner received unreported alimony income in the amount of $34,000. The notice stated:

> It is determined that the $34,000.00 you received in 1995 from your former spouse, George R. Reed, under an "Order on Temporary Allowances" qualifies as alimony payments. Accordingly, the $34,000.00 is includable in your gross income.

The $34,000 amount was comprised of six payments of $4,000 and one payment of $10,000. Despite the statement in the notice that all of these payments were made pursuant to the temporary order, the parties have stipulated that only the six $4,000 payments were received pursuant to the temporary order, while the $10,000 payment was received pursuant to the final agreement.

Under the Internal Revenue Code, amounts paid which are "alimony or separate maintenance payments" must be included in

the recipient's income.  See secs. 61(a)(8) and 71(a).  The phrase "alimony or separate maintenance payments" is defined as follows:

> SEC. 71(b)(1).  In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>
> > (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
> >
> > (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
> >
> > (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
> >
> > (D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

In determining whether payments meet this definition, the labels used by taxpayers in an instrument are not controlling.  See Benedict v. Commissioner, 82 T.C. 573, 577 (1984).

The first amounts at issue in this case are the six payments of $4,000 each which petitioner received pursuant to the temporary order.  The temporary order stated in relevant part:

> As and for temporary spousal support, Husband [Mr. Reed] will pay to the Clerk of the Circuit Court, St. Johns County, Florida, for disbursement to the Wife [petitioner] a monthly sum of $4,000.00 commencing on July 1, 1994 and each month thereafter until further Order of Court.  He shall also pay an additional sum of

> $1,000.00 per month as and for partial retroactive
> support and this shall be for a period of six months.

The order did not apportion the $4,000 payments between child support and alimony.

Based upon the record in this case, we find that the payments made under the temporary order meet the definitional requirements of section 71(b)(1).  First, the payments were received by petitioner under a divorce or separation instrument, as defined in section 71(b)(2).  Second, the instrument did not designate the payments as not includable in gross income under section 71 and not allowable as a deduction under section 215.  Third, petitioner was not a member of the same household as Mr. Reed at the time of the payments.

The fourth requirement is that the obligation to make payments ceases upon the death of the payee spouse.  This requirement may be met either by the terms of the instrument itself, or by operation of State law.  See Cunningham v. Commissioner, T.C. Memo. 1994-474.  The terms of the temporary order do not satisfy this requirement, so we next examine whether the obligation would cease by operation of law.  At trial, respondent assumed that Florida law governs petitioner's right to receive alimony payments under both the temporary order and the final agreement.  Petitioner did not dispute this assumption, and we find nothing in the record to indicate that it was in error.  Therefore, we must decide the issue as we believe the highest

Florida court would decide it.  See Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967).  In the absence of a decision by the highest court, we must apply what we "find to be the state law, after giving 'proper regard' to relevant rulings of other courts of the State."  Id.

With respect to permanent periodic alimony, it is clear under Florida law that a payor's obligation to make payments ceases upon the death of the payee.  See Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla. 1980).  In our review of Florida law we have found no case in which the Supreme Court of Florida directly held that the obligation to pay support under a temporary order likewise ceases upon the death of the payee.  We are convinced, however, that the court would find that the general rule applicable to permanent periodic alimony also applies to temporary support.

There is no compelling distinction--between permanent periodic alimony and support awarded under a temporary decree-- which would cause the former, but not the latter, to cease upon the payee spouse's death.  On the contrary, the temporary nature of the order suggests that the payments would not have survived petitioner.  The District Court of Appeal of Florida, Fourth District, relied upon this point when it recently addressed a similar issue in Faile v. Fleming, 763 So.2d 459 (Fla. Dist. Ct. App. 2000).  In that case, the court found that an award of

"reasonable monthly living expenses" and "temporary relief" in a temporary relief order could not support a contract claim by the payee spouse after the payor spouse's death. The court stated:

> The order was a temporary relief order, a non-permanent agreement. It is clearly established that the obligation to pay permanent alimony dies with the obligated party, so that to overcome this general rule, "there must be an express indication of an intention to the contrary" in an agreement between the parties. A temporary relief order carries less of a suggestion of permanency than an award of permanent alimony. No reading of the temporary relief order implied that David intended that support payments referenced in the order were to continue after his death.

Id. at 460 (citation omitted). Similarly, in this case nothing in the temporary order indicates an intention that the support payments were to continue after petitioner's death.

Based upon our analysis of Florida law, we hold that Mr. Reed's obligation to make the payments under the temporary order would have ceased upon petitioner's death by operation of law.

Petitioner argues that these six $4,000 payments are properly characterized as child support payments. Portions of payments "which the terms of the divorce or separation instrument fix (in terms of an amount of money or a part of the payment) as a sum which is payable for the support of children of the payor spouse", sec. 71(c)(1), are not included in the definition of alimony or separate maintenance payments. See sec. 71(c)(1); Ambrose v. Commissioner, T.C. Memo. 1996-128. Nothing in the order fixes any portion of the $4,000 payments as child support. Petitioner asserts that the support she had sought from the court

was for her children,[2] and that the $4,000 payments should be considered child support despite the lack of identification as such in the court order.  However, only child support payments fixed by the terms of the instrument itself are excluded from the definition of alimony or separate maintenance payments; an inference cannot be made from intent or surrounding circumstances that payments were for child support.  See id.

Because the terms of the temporary order do not fix any portion of the $4,000 payments as child support, and because the payments otherwise meet the definitional requirements of section 71(b)(1), we hold that petitioner received $24,000 in alimony income under sections 61(a)(8) and 71(a).

The next amount at issue in this case is the lump-sum payment of $10,000 which petitioner received pursuant to the final settlement agreement.

Petitioner and respondent stipulated the following statement in the Stipulation of Facts filed in this case:

> Petitioner concedes that the $10,000 payment she received in August, 1995 is includible as taxable income for the 1995 taxable year.

This concession is not a stipulation of fact--it is a conclusion of law.  As such, it does not bind this Court. See Edward D.

---

[2]In addition, Mr. Reed had also filed a motion with the circuit court which sought to establish "Child Support and Other Temporary Relief."  However, there is no evidence that this motion was ever argued and/or decided.

Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 630 (1983), affd. 752 F.2d 1128 (6th Cir. 1985); Gaddy v. Commissioner, 38 T.C. 943, 951 (1962), affd. in part and remanded in part 344 F.2d 460 (5th Cir. 1965). We therefore turn to the merits of this issue. The final agreement provided in relevant part:

> The Husband [Mr. Reed] shall pay to the Wife [petitioner] as and for lump sum alimony the amount of $10,000 payable within fifteen (15) days from the date of the Final Judgment of Dissolution. Beginning January 1, 1996, the Husband shall pay to the Wife as rehabilitative alimony the sum of $516.67 per month for sixty (60) months which shall be due and payable the first of each month, until the death of either party or the remarriage of the Wife or the completion of the sixty (60) payment obligation, whichever shall first occur.

The terms of this agreement do not state that the liability to make the $10,000 payment would have ceased after the death of petitioner, despite the fact that the very next sentence specifically terminates Mr. Reed's liability to make the rehabilitative alimony payments (of $516.67 for 60 months) after petitioner's death. Furthermore, assuming that Florida law would affect the alimony obligation under the final agreement (the status of the agreement is not clear from the record), the obligation to make a lump-sum alimony payment--unlike the obligation to pay permanent periodic alimony--does not terminate upon the death of the payee spouse by operation of Florida law. See Canakaris v. Canakaris, supra at 1201; Philipose v. Philipose, 431 So.2d 698, 700 (Fla. Dist. Ct. App. 1983). In Canakaris, the Supreme Court of Florida stated that there arises

"upon the entry of a final judgment of a lump sum award a vested right which is neither terminable upon a spouse's remarriage or death nor subject to modification."[3]  Cankaris v. Canarkis, supra at 1201.

Because Mr. Reed's obligation to make the lump-sum alimony payment would have continued after petitioner's death, the lump-sum payment is not an alimony or separate maintenance payment as defined in section 71(b)(1).  See sec. 71(b)(1)(D).  We therefore hold that, contrary to respondent's determination and petitioner's concession, the $10,000 lump-sum alimony payment received by petitioner is not includable in her gross income under section 61(a)(8) or 71(a).[4]

---

[3]This is consistent with the purpose of lump-sum alimony in Florida, which may be awarded for support or vested property interests, or to ensure an equitable distribution of property acquired during the marriage.  See Canakaris v. Canakaris, supra at 1201.  For example, an award of the marital home may be appropriate as lump-sum alimony.  See id. at 1204.

[4]The final agreement further provides that "The alimony received by the Wife [petitioner] from the Husband [Mr. Reed] shall be considered income to the Wife and tax deductible to the Husband."  We note that this statement has no effect on the Federal income tax treatment of the $10,000 payment in this case. It is clear that individuals may expressly exclude payments from the definition of alimony or separate maintenance payments by designating the payments as not includable under sec. 71 and not deductible under sec. 215.  See sec. 71(b)(1)(B).  However, the individuals in this case did not attempt to exclude the $10,000 payment from the definition.  Rather, they attempted to include in the definition the payment which otherwise does not meet the requirements of sec. 71(b)(1).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

under Rule 155.