T.C. Memo. 2018-145

UNITED STATES TAX COURT

CATHERINE J. CLAY, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4836-14.                          Filed September 10, 2018.

Catherine J. Clay, pro se.

<u>Rebecca M. Clark</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined a deficiency in petitioner's Federal

income tax for 2011 of $9,769 and an accuracy-related penalty under section

6662(a)[1] of $1,954.  Following concessions by the parties,[2] the issues for decision

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2] are: (1) whether and to what extent the long-term disability (LTD) benefits petitioner received from Standard Insurance Co. (Standard) in 2011 are includible in income for taxable year 2011, (2) whether and to what extent the Social Security disability (SSD) benefits that petitioner received in 2011 are includible in income for that year, and (3) whether and to what extent the $6,000 of SSD benefits withheld in 2011 by the Social Security Administration for payment of petitioner's attorney's fees is deductible.

## FINDINGS OF FACT

Some of the facts are stipulated and are so found. The stipulation of facts and its exhibits are incorporated herein by this reference. Petitioner resided in Michigan when the petition was filed.

---

[1](...continued) Revenue Code of 1986, as in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts have been rounded to the nearest dollar. Figures may differ because of rounding.

[2]Respondent has conceded that petitioner is not liable for the sec. 6662(a) penalty. Petitioner has conceded that she received a taxable State income tax refund of $170. Finally, petitioner did not contest respondent's disallowance of $5,363 of the $9,315 of medical expenses claimed as a deduction on petitioner's Schedule A, Itemized Deductions, either in the petition, at trial, or on brief, and we therefore deem the issue conceded. See Rule 34(b); Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986); Martin v. Commissioner, T.C. Memo. 2016-189, at *2 n.2.

[*3] I.       Petitioner's disability coverage

In 2009 petitioner was employed as a teacher by the School District of the City of Saginaw (District). During that time the District maintained, and paid the premiums on, a group LTD insurance policy with Standard (Standard policy) on behalf of its employees, including petitioner. Petitioner did not report as income the premiums paid on her behalf by the District.

Under the terms of the Standard policy, a disabled District employee was entitled to receive annual LTD payments equal to 66-2/3% of the employee's pre-disability income, less deductible income. Deductible income for this purpose included "[a]ny amount you * * * receive or are eligible to receive because of your disability under * * * The Federal Social Security Act." The policy required an LTD benefit recipient to pursue any deductible income for which he or she was eligible. Where LTD payments had been made to a recipient without any reduction for deductible income, and the recipient thereafter received deductible income, the Standard policy treated the portion of the LTD payment equal to the deductible income as an "overpayment" and required the recipient to repay the overpayment to Standard. The Standard policy provides as follows concerning repayment of any overpayment: "We will notify you of the amount of any overpayment of your claim under any group disability insurance policy issued by

[*4] us.  You must immediately repay us.  You will not receive any LTD Benefits until we have been repaid in full.  In the meantime, any LTD Benefits paid * * * will be applied to reduce the amount of the overpayment."

The Standard policy also limited the period during which a recipient could receive LTD benefits.  An LTD benefit recipient who became disabled before age 61 could receive, at a maximum, LTD benefits until age 65.  However, if the LTD benefit recipient's disability was "caused or contributed to" by a mental disorder, he or she could receive LTD benefits for a maximum of 24 months.

## II.  Petitioner's accident and the Standard LTD payments

On October 8, 2009, petitioner was involved in an automobile accident.  She was 49 years old and earning $65,798 per year from the District.  Petitioner thereafter applied for and received sick pay from the District between November 19, 2009, and January 5, 2010.

In January 2010 petitioner applied for LTD benefits under the Standard policy.  On September 14, 2010, Standard approved her request effective retroactively to January 6, 2010.  In September 2010 petitioner received a lump-sum payment of $29,245 for eight months of benefits (January 6 through September 5, 2010) at $3,656 per month.

**[*5]** On October 8, 2010, petitioner signed a document entitled "Repayment Agreement" (repayment agreement) with Standard, which stated in pertinent part: "I understand that my receiving or being eligible to receive Deductible Income may result in an overpayment of LTD benefits. I agree to immediately repay The Standard for any such overpayment."

After receipt of the lump-sum payment, petitioner received monthly LTD payments of $3,656 through December 2011. The payments ceased after that month because Standard took the position that petitioner's disability was caused by a mental disorder, with the consequence under the Standard policy that she was entitled to receive only 24 months of LTD benefits. In total, Standard made $43,868 of LTD payments to petitioner in 2010 and again in 2011. Standard filed with respondent and issued to petitioner a Form W-2, Wage and Tax Statement, for 2011 reporting the $43,868 in LTD payments it made to petitioner during that year as wages. See generally sec. 32.1, Temporary Employment Tax Regs., 47 Fed. Reg. 29225 (July 6, 1982) (as amended by T.D. 7867, 48 Fed. Reg. 793 (Jan. 7, 1983), and T.D. 9233, 70 Fed. Reg. 74199 (Dec. 15, 2015)).

Petitioner disagreed with Standard's position that her disability was due to a mental disorder, instead contending that her disability was physical. Petitioner sought and was granted an internal review of Standard's determination, but

**[*6]** Standard did not alter its position. Petitioner continued to dispute Standard's determination and contended that she was entitled to further LTD benefits beyond 2011. As of the time of trial, Standard maintained its position that petitioner's disability was caused by a mental disorder and had refused to pay any LTD benefits beyond the two years' worth that had been paid.

III. Petitioner's SSD benefits and Standard's demand for repayment

Petitioner applied for SSD benefits in January 2010 as required under the Standard policy. After she was initially denied benefits by the Social Security Administration, petitioner hired an attorney to assist her in the application process on a contingent fee basis. On November 22, 2011, petitioner received a letter from the Social Security Administration approving her application for SSD benefits. The letter advised that petitioner was entitled to monthly SSD payments of $1,735. The benefits were payable retroactively to April 2010 (as a consequence of the requirement that an individual be fully disabled for five months before commencement of SSD benefits). The letter explained that petitioner would receive her monthly payment for the current month, November, in the following month, December. The letter further explained that petitioner was entitled to retroactive benefits of $32,965 for April 2010 through October 2011 (at $1,735 per month) but that $6,000 of this amount would be withheld to pay her attorney

**[*7]** for assisting her in securing the SSD benefits.  After the November 22, 2011, letter but before the end of 2011, petitioner received a lump sum of $28,700 in SSD benefits.  This figure represented the $32,965 in retroactive benefits, plus the November 2011 monthly payment of $1,735, less the $6,000 withheld to pay petitioner's attorney's fees.  Out of this amount received in 2011, $13,880 was for SSD benefits attributable to 2010--i.e., the portion of the $32,965 in retroactive benefits for April 2010 through November 2010 (at $1,735 per month).[3]

In view of the SSD payments petitioner received in 2011, Standard determined that it had overpaid LTD benefits to her by $36,694.[4]  Standard first sent petitioner a notice of her obligation to repay this amount on December 23, 2011, and subsequently sought to collect the overpayment.  Petitioner, however, did not use any of the SSD lump sum of $28,700 she received in late 2011 to repay Standard for the overpayment of her LTD benefits.  Instead, while acknowledging

---

[3]The Social Security Administration issued petitioner a Form 1099-SSA, Social Security Benefit Statement, for 2011.  It reports that petitioner was paid $34,700 in benefits in 2011 but that $13,880 of that amount was for 2010.  The December 2010 SSD benefit payment, received by petitioner in 2011, was treated on the Form 1099-SSA as attributable to 2011.

[4]This figure apparently represents the 20 months of SSD benefits petitioner received in 2011, plus an additional month's worth for December 2011, received in January 2012, and an additional five days' worth for January 1-5, 2011, received in February 2012.  In its calculations Standard treated petitioner's monthly SSD payment as equal to $1,734 rather than $1,735, the correct figure.

[*8] that she was required to repay Standard, she took the position that repayment should come from future LTD payments that she believed were due to her, even though Standard's position was that petitioner had been paid all LTD benefits to which she was entitled under the Standard policy. Petitioner used the $28,700 lump sum to pay off an old tax debt and to travel out of State for physical therapy.

In 2013 Standard wrote petitioner on at least one occasion offering various repayment terms. By July 2013 Standard had referred the matter to a collection agency.

As of the time of trial (more than three years after Standard had first sought repayment) petitioner had not repaid any of the $36,694 overpayment of LTD benefits that Standard sought to collect from her.

IV.     Petitioner's 2011 return

Petitioner did not report any of the LTD payments she received from Standard in 2011 on her 2011 Federal income tax return. Petitioner reported $34,700 of Social Security benefits on line 20a and zero of that amount as taxable on line 20b of the 2011 return. Petitioner claimed a $6,000 miscellaneous deduction on Schedule A for the amount the Social Security Administration withheld from her SSD benefits and paid to her attorney.

**[*9]** V.     Notice of deficiency

Respondent thereafter issued a notice of deficiency to petitioner for 2011

determining, inter alia, that:

(1) petitioner had failed to report $43,867 of taxable wages (i.e., the amount

of LTD benefits petitioner received from Standard in 2011[5]),

(2) petitioner had failed to report $27,634 of taxable SSD benefits for 2011,

and

(3) the $6,000 miscellaneous deduction claimed on Schedule A was

disallowed to the extent of $1,430.

Petitioner filed a timely petition for redetermination.

OPINION

I.     Unreported LTD income

A.     Respondent's unreported income determination

There is no dispute that petitioner received $43,868 of LTD benefits from

Standard in 2011; she concedes receiving this amount from Standard.

Consequently, there is an evidentiary foundation for respondent's determination of

unreported income in this amount, and petitioner retains the burden of showing

---

[5]The unrounded amount of the LTD benefits petitioner received in 2011 is $43,867.56.  Presumably this figure was rounded down to $43,867 in the notice of deficiency, whereas our findings round the figure to $43,868.

**[\*10]** error in that determination.  Cf. <u>United States v. Walton</u>, 909 F.2d 915, 918-919 (6th Cir. 1990) (requiring the Commissioner to provide evidentiary foundation for his determination of unreported income).

      B.     <u>Section 105 and the claim-of-right doctrine</u>

Section 105(a) and (c) provides that amounts received by an employee through accident or health insurance for personal injuries or sickness are generally includible in income to the extent such amounts are attributable to contributions by an employer which were not includible in the gross income of the employee, unless the amounts are computed with reference to the nature of the injury without regard to the period the employee is absent from work.  Here, the District paid the premiums for petitioner's coverage under the Standard policy, none of which were included in her taxable income.  Furthermore, the LTD benefits petitioner received from Standard were computed solely on a percentage of her salary and not on the nature of her injury.  Therefore petitioner must include the LTD benefits she received from Standard in income for 2011, absent some basis for exclusion.

Petitioner argues that $36,694 of the LTD benefits she received in 2011 are excludible from income because:  (1) pursuant to the repayment agreement, she was obligated by the end of 2011 to repay Standard the $36,694 it claimed it

**[*11]** overpaid her in LTD benefits from April 2010 through December 2011[6] and (2) the Standard policy restricted her use of any overpayment by requiring such amount to be repaid within 30 days.[7]  Respondent counters that regardless of Standard's claim for repayment, under the claim-of-right doctrine petitioner must include in her income for 2011 the $43,867 in LTD benefits she received during that year.

The claim-of-right doctrine treats otherwise taxable money proceeds received by a taxpayer under a claim of right, without restriction as to their disposition, as taxable income even though the taxpayer may be under a contingent obligation to return the money at a later time.  See Nordberg v. Commissioner, 79 T.C. 655, 664 (1982), aff'd without published opinion, 720 F.2d 658 (1st Cir. 1983).  In N. Am. Oil Consol. v. Burnet, 286 U.S. 417, 424

---

[6]See supra note 4.

[7]In 2011, petitioner received SSD benefits of $19,085 attributable to 2011 (January-November 2010 benefits) and $15,615 attributable to 2010 (April-December 2010 benefits).  Thus, it would appear that, under the terms of the Standard policy, Standard overpaid $19,085 of LTD benefits to petitioner in 2011, not $36,694.  (The remainder of the overpayment was made in 2010, before petitioner's eligibility for SSD benefits, and thus obligation to repay Standard a portion of the LTD benefits received, was known.)  Nevertheless, since we conclude hereinafter that petitioner does not qualify for any exception to the claim-of-right doctrine, we need not resolve which portion of the LTD overpayment is attributable to 2010 versus 2011.

**[\*12]** (1932), the Supreme Court articulated the doctrine as follows: "If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." In short, under the claim-of-right doctrine, when a taxpayer receives otherwise taxable funds without restriction as to their disposition and has only a contingent obligation to repay them, he is taxable in the year of receipt notwithstanding the contingency. Nordberg v. Commissioner, 79 T.C. at 664; Prof'l Ins. Agents of Mich. v. Commissioner, 78 T.C. 246, 270 (1982), aff'd, 726 F.2d 1097 (6th Cir. 1984); Hope v. Commissioner, 55 T.C. 1020 (1971), aff'd, 471 F.2d 738 (3d Cir. 1973).

However, there is a limited exception to the claim-of-right doctrine, first enunciated by the Court of Appeals for the Ninth Circuit in United States v. Merrill, 211 F.2d 297 (9th Cir. 1954). In Merrill, the taxpayer, who served as executor of his deceased wife's estate, had paid himself the entire $20,000 executor's fee out of his wife's estate's share of the couple's community property. He received $12,500 of the fee in 1939 and the remaining $7,500 in 1940. When he learned from the Internal Revenue Service agent examining his wife's estate tax return that only half of the executor's fee was deductible by the estate, he

[*13] concluded, after consultation with an accountant, that half of the fee had been mistakenly paid to him by the estate. (Payment of the fee should have been split equally between each spouse's half share of the community property.) As a result, on December 31, 1940, he made adjustments to the estate's and his own personal books of account to reflect his personal indebtedness to the estate for half of the executor's fee, or $10,000. He repaid $10,000 to the estate in 1943 before his refund suit was considered.

The Commissioner argued that the entire $20,000 executor's fee was taxable income to the taxpayer under the claim-of-right doctrine. The Court of Appeals agreed with respect to the portion of the fee paid to the taxpayer in 1939, as his mistake was not discovered until 1940, and at the close of 1939 he held the funds received in that year under a mistaken, but good-faith, claim of right. The Court of Appeals disagreed, however, with respect to the portion of the fee received in 1940, reasoning as follows: "We are not aware that the * * * [claim-of-right doctrine] has ever been applied where, as here, in the same year that the funds are mistakenly received, the taxpayer discovers and admits the mistake, renounces his claim to the funds, and recognizes his obligation to repay them." Merrill, 211 F.2d at 304. The Court of Appeals held that the taxpayer was not required to report as income the portion of the fee received in 1940, the year the taxpayer recognized

**[*14]** his obligation to repay, citing his good faith in making the 1940 bookkeeping entries and his actual repayment in 1943.

The Tax Court has recognized the Merrill exception to the claim-of-right doctrine. See Nordberg v. Commissioner, 79 T.C. at 665; Hope v. Commissioner, 55 T.C. at 1030; Mais v. Commissioner, 51 T.C. 494, 499 (1968); Gaddy v. Commissioner, 38 T.C. 943, 948-949 (1962), aff'd in part, remanded in part, 344 F.2d 460 (5th Cir. 1965); Bishop v. Commissioner, 25 T.C. 969, 974 (1956). We have emphasized that the application of the exception requires that the taxpayer, in the year a mistaken payment is received, both recognize an obligation to repay and make provision for repayment. "Stated briefly, the Merrill case holds that where a fixed and definite obligation to repay is recognized in the year of overpayment and provision is made for its repayment, the amounts received are not within the scope of the claim-of-right doctrine." Gaddy v. Commissioner, 38 T.C. at 949; see also Hope v. Commissioner, 55 T.C. at 1030.

In Gaddy, the taxpayer-husband had entered into a contract on July 1, 1956, to lease his tanker trucks to a petroleum producer to haul petroleum at a rate per mile that was intended not to exceed the price the petroleum producer would have to pay if the hauling were done by a contract hauler. The parties to the contract agreed that the rate of 23 cents per mile should constitute the proper rate but

**[*15]** further agreed that, in the event the foregoing rate proved to be too high or too low in relation to the contract-hauler price, an adjustment to the rate would be made by amendment to the contract or a new contract. The taxpayer received the 23-cent rate in 1956 and through much of 1957, but in September 1957 the petroleum producer discovered that the rate was too high and advised the taxpayer. The producer calculated that it had overpaid the taxpayer $15,434 over the period of July 1, 1956, through July 31, 1957--$444 of which had been paid during 1957, the year before the Court. The parties thereafter agreed that the taxpayer would repay the overpayment to the producer. They executed a new contract on October 1, 1957, at a rate that was designed to effect the taxpayer's repayment of the overpayment to the producer.

We held that the $444 received by the taxpayer in 1957 was not includible in his income for 1957 under the claim-of-right doctrine pursuant to the Merrill exception, reasoning that he had recognized his liability to repay the overpayment and had made provision for its repayment in the year the overpayment had been received. 38 T.C. at 949. The new contract the taxpayer entered into on October 1, 1957, at a rate designed to reimburse the producer for the overpayment, evidenced the required provision for repayment. Id.

[*16] We reached a different conclusion regarding provision for repayment in Nordberg. There, the taxpayer-husband had received a cash distribution during the year at issue from a corporation obligated under his note. The distribution had been made under an agreement providing that all or some portion of the distribution might have to be repaid, on 20 days' notice, in the event claims were brought against the corporation or its officers and directors. At the time of the distribution, certain creditors senior to the note held by the taxpayer had not been fully paid. The corporation had made no claim for repayment under the agreement during the year at issue.

We held the distribution in Nordberg was taxable in the year the taxpayer received it under the claim-of-right doctrine. We reasoned that no exception to the claim-of-right doctrine was appropriate because the taxpayer had neither recognized any fixed obligation to repay the amount received nor made any provision for repayment in the year the distribution was made. Nordberg v. Commissioner, 79 T.C. at 665. We rejected as any provision for repayment the taxpayer's claim that he intended to borrow on the equity in his residence to meet his obligation, especially given the lack of any specifics regarding a financial institution prepared to make such a loan. Id. at 665-666. We noted further that he had not segregated the proceeds of the distribution as a source of possible

[*17] repayment; instead, he had spent the proceeds in the year distributed to repay student loans, to make improvements to his residence, to pay legal fees, and to pay for a vacation. Id. at 662.

Applying the foregoing principles to the facts of this case, we conclude that the $43,868 in LTD benefits petitioner received in 2011, which are taxable income to her pursuant to section 105(a) and (c), must be recognized by her for that year under the claim-of-right doctrine. Petitioner's eligibility for the SSD benefits was established, and her first receipt of them occurred, in late 2011. Thus 2011 is the year in which petitioner and Standard became aware that her LTD benefits had been overpaid under the terms of the Standard policy. Even if one assumes arguendo that petitioner recognized that a portion of her LTD benefits had been overpaid and acknowledged an obligation to repay them, she nevertheless does not come within the Merrill exception because she did not make provision for repayment in 2011.

The taxpayer in Gaddy, by the close of the taxable year in which the mistaken overpayments to him had been ascertained, had entered into a contract with the petroleum producer who had overpaid him that would effect his repayment to the producer over time. Payments under that contract had commenced before yearend. We concluded in those circumstances that provision

[*18] for repayment had been made. By contrast, petitioner was at complete loggerheads with Standard over arrangements for repayment of the overpaid LTD benefits at the close of 2011. Petitioner insisted that any repayment be made out of additional LTD benefits she contended Standard owed her. Standard maintained that petitioner was not entitled to any further LTD benefits, as she had received the full 24 months of LTD benefits for a disability attributable to a mental disorder. Thus, petitioner had made no provision for repayment by the close of 2011. (Indeed, this standoff had persisted for more than three years as of the time of trial.) Moreover, petitioner's lack of a good faith intent to repay is also evidenced by the fact that she spent the $28,700 lump sum of SSD benefits she received in late 2011 to satisfy a tax debt and to travel rather than to meet her repayment obligation to Standard. Petitioner's circumstances are more akin to those of the taxpayer in Nordberg, who had made no tangible arrangements to meet any repayment obligation he might incur and as a consequence was found ineligible for the Merrill exception. We conclude that petitioner does not fall within the Merrill exception to the claim-of-right doctrine and must include in taxable income the LTD benefits she received in 2011 under the claim-of-right doctrine. We therefore sustain respondent's determination that petitioner failed to report $43,867 of taxable income for 2011.

[*19] II.    Petitioner's SSD income

Petitioner reported the $34,700 of SSD benefits she received in 2011 on her 2011 return but treated the entire amount as nontaxable.  She maintains that position on brief.[8]  The notice of deficiency determined that $27,634 of the SSD benefits petitioner received in 2011 is taxable.  Respondent maintains that position on brief, except he has conceded that petitioner should receive whatever benefit may be available to her as a result of an election under section 86(e) with respect to the $13,880 portion of the SSD benefits she received in 2011 that is attributable to 2010.[9]

_____

[8]At the outset of trial petitioner acquiesced in respondent's counsel's assertion that the parties had agreed that the notice of deficiency had correctly determined the amount of petitioner's SSD benefits that is taxable for 2011 (without regard to any election under sec. 86(e)).  However, both parties were well aware that petitioner was disputing whether the full amount of the LTD benefits she received in 2011 is includible in her income for that year.  And the notice of deficiency's determination of the amount of SSD benefits includible in petitioner's 2011 income is predicated on the notice's position that the full amount of the LTD benefits petitioner received in 2011 is includible in her income for that year.  We conclude in these circumstances that there is significant ambiguity in petitioner's seeming concession that the notice of deficiency correctly determined the amount of her SSD benefits that is includible in income, and we therefore disregard it.

[9]Sec. 86(e) affords an election to taxpayers who receive a lump-sum payment of Social Security benefits during the taxable year in which a portion of the benefits is attributable to prior taxable years.  If the election is made, the amount included in gross income for the taxable year of receipt must not exceed the sum of the increases in gross income for those previous tax years that would

(continued...)

**[\*20]** Gross income includes all income from whatever source derived unless excluded from gross income by a provision of the Internal Revenue Code. <u>See</u> sec. 61(a). In the case of Social Security benefits, the amount included in gross income, if any, is determined in accordance with the formula set forth in section 86. Under that formula, a portion of the benefits is includible in gross income if the sum of the taxpayer's modified adjusted gross income, as defined by section 86(b)(2), plus one-half of the amount of Social Security benefits received, exceeds certain threshold amounts, the base amount and the adjusted base amount. <u>See</u> sec. 86(a).

The computation in the notice of deficiency, presumably made under section 86, of the taxable portion of petitioner's SSD benefits for 2011 does not include the additional $170 of income from a taxable State tax refund to which petitioner stipulated for purposes of the trial. The computation also does not take into account the impact of the section 86(e) election that respondent concedes petitioner may make.[10] We therefore expect the parties to address the taxable

---

[9](...continued)
result from taking into account the portion of the benefits attributable to the previous taxable years. <u>See</u> <u>Pollard v. Commissioner</u>, T.C. Memo. 2011-132.

[10]The record is insufficient for us to determine the impact of any sec. 86(e) election, as it does not include information concerning petitioner's income for

(continued...)

[*21] portion of petitioner's SSD benefits in their Rule 155 computations. Those computations must take into account our holding herein that petitioner's 2011 income includes $43,868 in LTD benefits and petitioner's concession that she had taxable income of $170 from a State tax refund that was not reported on the 2011 return nor determined to be income in the notice of deficiency.

III. Deductibility of attorney's fees

The notice of deficiency determined that the SSD benefits petitioner received in 2011 include the $6,000 in attorney's fees that the Social Security Administration withheld from her $34,700 in benefits and paid directly to her attorney, and that petitioner is entitled to deduct that amount as a Schedule A miscellaneous itemized deduction to the extent it exceeded 2% of petitioner's adjusted gross income--namely, $4,570. Petitioner conceded at trial that the $6,000 paid to her attorney is includible in the SSD benefits she received but nevertheless on brief contends that the $6,000 should not be so included. Regardless of petitioner's position, it is now well settled that fees paid to compensate for an attorney's services in securing the recovery of income for the taxpayer are generally includible in the taxpayer's income even if paid directly to

---

[10](...continued)
2010.

[*22] the attorney from the recovered amounts.  See Commissioner v. Banks, 543 U.S. 426, 429 (2005).  Respondent is likewise correct that these attorney's fees may be deducted as a miscellaneous itemized deduction but, pursuant to section 67(a), only to the extent that they exceed 2% of petitioner's adjusted gross income.  See secs. 63(d), 67(a) and (b); Glassman v. Commissioner, T.C. Memo. 1997-497, aff'd, 198 F.3d 253 (9th Cir. 1999); sec. 1.67-1T(a)(1)(ii), Temporary Income Tax Regs., 53 Fed. Reg. 9875 (Mar. 28, 1988).  We therefore sustain his determination in that regard.[11]

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[11]The notice of deficiency did not determine, and respondent has not argued, that petitioner's deduction for attorney's fees is limited to an amount allocable to the recovery of that portion of her SSD benefits that is includible in gross income. See sec. 1.212-1(a)(1), (e), Income Tax Regs.; Rev. Rul. 87-102, 1987-2 C.B. 78. Respondent has accordingly waived that argument.